IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **VONEKA Q. NETTLES, *et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 13-0605-WS-C** |
| | ) | |
| **DAPHNE UTILITIES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter comes before the Court on defendant's Motion for Summary Judgment (doc. 80) with respect to the claims of plaintiff Cedric Goodloe. The Motion has been briefed and is now ripe for disposition.[1]

## I. Relevant Background.

Cedric Goodloe is one of three plaintiffs who brought this action alleging race-based employment discrimination by defendant, Daphne Utilities.[2] As pleaded in the Amended Complaint, Goodloe, who is African-American, has asserted causes of action against Daphne

---

[1] Also pending is defendant's filing styled "Motion to Strike and Correct a Portion of Plaintiff Cedric Goodloe's Response in Opposition to Defendant's Motion for Summary Judgment" (doc. 108). In that Motion, defendant takes umbrage at the heading for Goodloe's statement of facts in his brief, which reads, "Plaintiff Cedric Goodloe's Statement of Undisputed Facts." (Doc. 88, at 1.) Defendant observes that Goodloe's factual presentation is not "undisputed," but merely constitutes Goodloe's version of the facts. Be that as it may, formal judicial corrective action (*i.e.*, striking the word "undisputed" from the brief) is unnecessary. Defendant is not bound by Goodloe's characterization of whether particular facts are undisputed; moreover, the Court is confident that defendant will take appropriate steps to identify pertinent factual disputes. For these reasons, the Motion to Strike (doc. 108) is **denied**.

[2] The other two plaintiffs, Voneka Q. Nettles and Carlos Butler, assert claims that are factually (and in some instances, legally) distinct from Goodloe's. In light of the individual-specific nature of each plaintiff's claims, the Court has ordered that separate trials will be held for each plaintiff. (*See* doc. 18.) Defendant filed three plaintiff-specific Motions for Summary Judgment, each of which has been briefed independently. This Order is confined to the claims of plaintiff Goodloe, and neither considers nor adjudicates the claims of plaintiffs Nettles or Butler.

Utilities for wage discrimination, alleging that he was paid less than white employees, in violation of 42 U.S.C. §§ 1981 and 1983 ("Count VI"); and for retaliation, alleging that Daphne Utilities fired him "due to his complaints of racial unfairness on the job," again in violation of §§ 1981 and 1983 ("Count VII"). (*See* doc. 6, at 10.) Daphne Utilities contends that it is entitled to judgment as a matter of law with respect to both of these claims.

The relevant record facts are as follows:[3] Goodloe began working at Daphne Utilities as a Payroll/Benefits Coordinator/Trainer in 2006. For some period of time, he was assigned to defendant's workplace by a temporary employment agency; however, Daphne Utilities hired him as a full-time employee in December 2012, subject to a six-month probationary period. (Goodloe Decl. (doc. 90), at 1.) Goodloe's duties included payroll, benefits, interviewing, training/development, terminations, safety, and conflict resolution, among others. (*Id.* at 2.) His direct supervisor was Danny Lyndall, the Operations Manager for Daphne Utilities. (Goodloe Dep. (doc. 82, Exh. 1), at 21.) Neither Goodloe's job title nor his duties changed when he became a full-time, direct Daphne Utilities employee. (*Id.*; Goodloe Decl., at 2.)[4]

Paradoxically, the seeds of discontent were sown when Goodloe received Daphne Utilities' offer of full-time employment on December 21, 2012. That offer included compensation of $17.31 per hour; however, Goodloe, Lyndall, and Deloris Brown (Human

---

[3] The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). Thus, Goodloe's evidence is taken as true and all justifiable inferences are drawn in his favor. Also, federal courts cannot weigh credibility at the summary judgment stage. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices."). Therefore, the Court will "make no credibility determinations or choose between conflicting testimony, but instead accept[s] [Goodloe]'s version of the facts drawing all justifiable inferences in [his] favor." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).

[4] In its reply, Daphne Utilities disputes Goodloe's evidence that his job title stayed the same, and offers contrary evidence that his title actually morphed from "Payroll/ Benefits Coordinator/Trainer" in 2006 to "HR Generalist" in March 2011 to "Operations and Benefits Coordinator" in December 2012. (Doc. 109, at 2.) This dispute is not material to the issues raised by defendant's Rule 56 Motion. Likewise, disputes between the parties as to the source of funding for Goodloe's position and whether he was "replacing" an employee named Tom Nettles who had worked in an entirely different department doing an entirely different job are not material to the Motion.

Resources Manager) had previously agreed that $23.00 would be a fair hourly rate "based on [Goodloe's] contributions to the organization." (Goodloe Decl., at 2; Goodloe Dep., at 41-43.) Goodloe promptly objected to Lyndall that the stated compensation did not comport with the prior agreement, and indicated that he thought it was "unfair" and "seemed to be discriminatory." (Goodloe Dep., at 44, 46.) Goodloe suggested to Lyndall that there was a "pay disparity" between himself and a white employee named David Sadberry, who was hired at around the same time. (Goodloe Decl., at 2.) Goodloe balked that he was being hired at the low end of the pay scale for his job, while Sadberry had been hired at the top of his corresponding pay scale, despite Goodloe's superior education (master's degree versus high school diploma) and experience (several years versus none). (*Id.* at 2-3.)[5]

Notwithstanding this hiccup on the date of Goodloe's hire, the next three months passed without incident. Goodloe's "attitude and disposition" in the workplace did not change; indeed, he "worked well with everyone" at Daphne Utilities. (Goodloe Decl., at 3.) At no time between December 21, 2012 and March 26, 2013 did Lyndall or anyone else at Daphne Utilities discipline, reprimand or counsel Goodloe (either orally or in writing) for subpar performance, disrespectful conduct, a poor attitude or any other work-related deficiency. (*Id.*) To the contrary, Lyndall "often" stated that Goodloe was "a great employee." (*Id.*)[6] No upper manager

---

[5] Sadberry was hired as the Maintenance Manager for Daphne Utilities at a starting salary of $56,000 per year. (Klump Aff. (doc. 82, Exh. 2), ¶ 3.) With regard to the references to "pay scale," Daphne Utilities uses a formal pay scale, on which positions are arranged from Grade 1 through Grade 16, with positions generally ascending the pay scale based on the level of responsibility or the importance of the position to the company's operations. (Lyndall Aff. (doc. 82, Exh. 3), ¶ 6.) Each pay grade has a defined range of compensation, from a minimum point to a maximum point. Where a new hire falls within that range for his or her job's pay grade "is discretionary based on the judgment of the hiring supervisor," but generally considers both the amount budgeted and the candidate's qualifications, education, work history and background. (*Id.*, ¶ 7.)

[6] When asked in his deposition what type of employee Goodloe was prior to March 27, 2013, Lyndall answered, "I thought he was a great employee. … In all the times I had known Mr. Goodloe, I thought he was a great employee." (Lyndall Dep., at 76.) Lyndall testified that he had considered Goodloe to be a "friend," and concurred with plaintiff's counsel's characterization of Goodloe as "a very pleasant individual." (*Id.* at 76, 78.) Indeed, Lyndall went so far as to acknowledge that "there was some sadness" among the staff of Daphne Utilities after Goodloe's dismissal. (*Id.* at 78-79.)

at Daphne Utilities expressed concerns to Goodloe about his job performance during this period. (*Id.* at 5.)

The events culminating in Goodloe's termination began, innocuously enough, at 6:29 a.m. on March 25, 2013, when he sent an email to Lyndall and two other Daphne Utilities employees. The message read as follows: "I will be out of the office today 3/25/13. However, I can be reached on my cell if you require my assistance. Thanks." (Doc. 82, Exh. 5.)[7] Two days later, on the morning of March 27, 2013, Lyndall summoned Goodloe to his office. (Goodloe Dep., at 49.) When Goodloe arrived, Lyndall asked why he had not called to report his absence, to which Goodloe responded that he had sent an email. (*Id.*) Goodloe then pointed out what he perceived to be disparity in Lyndall's treatment of black and white employees. He mentioned that a white employee named Tim Jones (whom Lyndall also supervised) routinely failed to call in to report absences, and in some cases did not even send emails; however, Jones had never been disciplined for this infraction. Meanwhile, Lyndall had called Goodloe into his office to rebuke him for reporting in via email rather than telephone. (Goodloe Decl., at 4-5; Goodloe Dep., at 50.) Continuing with the theme of perceived disparate treatment, Goodloe again expressed objection to Lyndall that Goodloe had been treated differently than Sadberry as to compensation. (Goodloe Decl., at 5; Goodloe Dep., at 50.) He also complained that Daphne Utilities was not paying African-American employees at the same level as white employees. (Goodloe Decl., at 5.) He noted that a black employee named Carlos Butler had filed a grievance alleging race discrimination as to annual raises in the Wastewater Field Services Department. (*Id.*) Lyndall became "visibly angry" as Goodloe voiced these concerns. (Goodloe Dep., at 53.) However, plaintiff's evidence is that Goodloe conducted himself in a calm, controlled manner at all times. The discussion never became "heated," and neither Goodloe nor Lyndall raised their

---

[7] Goodloe had sent similar emails to Lyndall and others at Daphne Utilities on no fewer than eight occasions in 2012, with no adverse repercussions, disciplinary action, or reprimand. (*See* doc. 90, Exh, D; Goodloe Decl., at 4.) Goodloe's evidence is that no one at Daphne Utilities had ever informed him that electronic notification of absences was insufficient or unacceptable, much less that telephonic notification was mandatory. (Goodloe Decl., at 4.) Daphne Utilities' rejoinder is that the 2012 emails were not on the same footing as the March 25, 2013 email, because in 2012 Goodloe was a temp agency employee assigned to Daphne Utilities, while in 2013 he was a direct full-time employee of Daphne Utilities. (Lyndall Dep. (doc. 82, Exh. 4, at 15-16.) At least in part, the discussion between Lyndall and Goodloe on the morning of March 27 related to the fairness, relevance or significance of that purported distinction.

voices. (Goodloe Dep., at 53-54; Goodloe Decl., at 4.) Ultimately, Goodloe indicated that he wished to present his concerns about "unethical things going on within the organization" to the Board of Daphne Utilities. (Goodloe Dep., at 53.) At that remark, Lyndall became "enraged" and stated, "This meeting is over." (*Id.* at 53-54.)[8]

A short time later, Lyndall discussed the situation with Deloris Brown, defendant's Human Resources Manager. (Lyndall Dep. (doc. 82, Exh. 4), at 21.) Lyndall informed Brown that he considered Goodloe's behavior to be "inappropriate." (*Id.*) Lyndall and Brown decided to meet with Goodloe later that day to terminate his employment. (*Id.* at 22-23.) Lyndall prepared a Termination Notice, reading in relevant part as follows:

> "Cedric Goodloe is within his six-month probation period as a new employee. … Daphne Utilities uses this probation period to evaluate capabilities, work habits and overall performance. Consequently, Mr. Goodloe has not met the required performance standards of Daphne Utilities and is dismissed effective March 27, 2013."

(Doc. 90, Exh. B.) Later in the day on March 27, 2013, Goodloe was called into Brown's office. (Lyndall Dep., at 32.) When Goodloe walked in, Lyndall handed him the Termination Notice. (*Id.* at 32-33; Goodloe Dep., at 56.) Other than the vague text of that document, Goodloe was given no explanation for this personnel action. (Goodloe Dep., at 56.) Goodloe asked whether he could initiate an appeal or grievance, to which Brown replied that such mechanisms were unavailable to probationary employees. (Lyndall Dep., at 116.)

Daphne Utilities' only record evidence as to specific reasons for Goodloe's termination is Lyndall's averment that Goodloe "was only marginally effective in his payroll and benefits duties" and that "[d]ue to his probationary status, combined with his argumentative attitude and mediocre performance, he was terminated." (Lyndall Aff., ¶ 4.) On summary judgment, Daphne

---

[8] In their briefs, the parties squabble about whether Goodloe also spoke with Lyndall about an anonymous letter alleging race discrimination at Daphne Utilities. (*See* doc. 88, at 12; doc. 109, at 10.) The Goodloe Declaration (which plaintiff cites as the sole record source of this allegation) lacks any mention of such an "anonymous letter." Because plaintiff cites no valid record basis for his contention that this issue was raised, the Court will not consider it on summary judgment.

Utilities endorses Lyndall's words almost verbatim as the purportedly "legitimate business reasons for Goodloe's termination." (Doc. 81, at 29.)[9]

**II. Summary Judgment Standard.**

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

The Eleventh Circuit has expressly rejected the notion that summary judgment should seldom be used in employment discrimination cases because they involve issues of motivation and intent. *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079 (11th Cir. 2004). Rather, "the summary judgment rule applies in job discrimination cases just as in other cases. No thumb is to be placed on either side of the scale." *Id.* at 1086 (citation omitted); *see also Williamson v. Clarke County Dep't of Human Resources*, 834 F. Supp.2d 1310, 1318 (S.D. Ala. 2011)

---

[9] Indeed, defendant's principal brief states as follows: "Daphne Utilities has asserted legitimate business reasons for Goodloe's termination. … Goodloe was only marginally effective in his payroll and benefits duties. Due to Goodloe's probationary status combined with his argumentative attitude and mediocre performance, he was terminated." (Doc. 81, at 29.)

(recognizing and applying rule that summary judgment standard is applied equally in employment discrimination cases as in other kinds of federal actions).

**III. Analysis.**

***A. The* McDonnell Douglas *Standard.***

Absent direct evidence of discrimination or retaliation, Goodloe must make a showing of circumstantial evidence that satisfies the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[10] Under this familiar burden-shifting analysis, plaintiff is required to make out a *prima facie* case of race discrimination and/or retaliation. If he does so, that showing "creates a rebuttable presumption that the employer acted illegally." *Underwood v. Perry County Com'n*, 431 F.3d 788, 794 (11th Cir. 2005). At that point, "the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. ... If the employer does this, the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext for discrimination." *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008) (citations and internal quotation marks omitted); *see also Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997) (outlining similar procedure for Title VII retaliation claims). A plaintiff may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Brooks v. County Com'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quotation omitted). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Springer v. Convergys Customer Management Group Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007).

---

[10] Although plaintiff's claims are nominally brought under 42 U.S.C. § 1981 rather than Title VII, the applicable legal standard is identical. *See, e.g., Brown v. Alabama Dep't of Transportation*, 597 F.3d 1160, 1174 n.6 (11th Cir. 2010) ("The analysis under [§ 1981] claims mirrors that under Title VII."); *Rice-Lamar v. City of Fort Lauderdale, Fla.*, 232 F.3d 836, 843 n.11 (11th Cir. 2000) ("The elements of a claim of race discrimination under 42 U.S.C. § 1981 are also the same as a Title VII disparate treatment claim in the employment context."); *Turnes v. AmSouth Bank, NA*, 36 F.3d 1057, 1060 (11th Cir. 1994) ("The *McDonnell Douglas* scheme for the allocation of burdens and the order of presentation of proof also applies in § 1981 cases involving discriminatory treatment in employment situations."); *Brown v. School Bd. of Orange County, Florida*, 459 Fed.Appx. 817, 819 (11th Cir. Feb. 28, 2012) ("Title VII and § 1981 have the same requirements of proof and utilize the same analytical framework.").

***B. Wage Discrimination Claim.***

In Count VI of the Amended Complaint, Goodloe asserts a claim of compensation discrimination against Daphne Utilities pursuant to 42 U.S.C. § 1981, made actionable through 42 U.S.C. § 1983.[11] Defendant now moves for summary judgment on Count VI, reasoning that Goodloe cannot make out a *prima facie* case of wage discrimination. Specifically, Daphne Utilities argues that Goodloe has failed to meet his burden of identifying an appropriate comparator in support of this claim. (*See* doc. 81, at 23-25.)[12]

To establish a *prima facie* case of intentional compensation discrimination based on race, Goodloe must show that: (i) he belongs to a racial minority; (ii) he received low wages; (iii) similarly situated comparators outside the protected class received higher compensation; and (iv) he was qualified to receive the higher wage. *See Cooper v. Southern Co.*, 390 F.3d 695, 735 (11th Cir. 2004); *Hill v. Emory University*, 346 Fed.Appx. 390, 395 (11th Cir. Aug. 25, 2009).

---

[11] The Amended Complaint also cites "the Due Process Clause of the 14th Amendment to the United States Constitution" as a legal basis for Count VI. (Doc. 6, ¶ 54.) Subsequently, however, Goodloe has informed the Court and opposing counsel that the "Due Process" component of the claim "was an error and should have been listed as an 'Equal Protection' claim." (Doc. 100.) Plaintiff has neither suggested nor shown that the distinction is material to the summary judgment analysis of Count VI.

[12] This argument is the sole ground for dismissal of Count VI identified in Daphne Utilities' principal brief; therefore, the Motion for Summary Judgment as to the wage discrimination claim stands or falls on whether Goodloe has made a sufficient showing of comparators to satisfy his *prima facie* burden. To be sure, Daphne Utilities argues for the first time in its reply that it has a legitimate nondiscriminatory reason for paying Goodloe differently than any comparators, for which plaintiff cannot show pretext. (*See* doc. 109, at 6-7.) But "[n]ew arguments presented in reply briefs are generally not considered by federal courts." *Brown v. CitiMortgage, Inc.*, 817 F. Supp.2d 1328, 1332 (S.D. Ala. 2011) (citations omitted); *see also Abrams v. Ciba Specialty Chemicals Corp.*, 663 F. Supp.2d 1220, 1232 n.16 (S.D. Ala. 2009) ("new arguments are impermissible in reply briefs"); *Adams v. Homeward Residential, Inc.*, 2014 WL 460936, *5 n.10 (S.D. Ala. Feb. 5, 2014) ("Federal courts generally do not consider new arguments presented for the first time in a reply brief."). Accordingly, this Court's consideration of the Rule 56 Motion as to Count VI is limited to the comparator / *prima facie* case issue presented in movant's principal brief. Even if the new argument set forth in the reply were considered on the merits, it would not help Daphne Utilities' Motion. Defendant has articulated no explanation (and pointed to no evidence) for why it selected the initial wage for Goodloe that it did when he was hired on a full-time basis. Daphne Utilities identifies the pay grade for Goodloe's position, but says nothing about how it chose the particular point for Goodloe within that grade's pay range. Of course, the Court will not speculate as to why Daphne Utilities paid Goodloe the wage that it did.

"The comparators must perform jobs similar to the plaintiff's; thus, the plaintiff must show that, in her job, she shared the same type of tasks as the comparators." *Cooper*, 390 F.3d at 735 (citation and internal quotation marks omitted).[13] Thus, a black plaintiff makes a *prima facie* showing of wage discrimination by showing that he "received lower wages than a white co-worker despite performing substantially the same work." *Lindsey v. Board of School Com'rs of Mobile County*, 491 Fed.Appx. 8, 10 (11th Cir. Sept. 25, 2012).

As noted, defendant's Rule 56 Motion asserts that Goodloe's *prima facie* claim fails because he "has simply not provided an appropriate comparator." (Doc. 81, at 25.) Plaintiff's summary judgment brief fails to address this issue (or his wage discrimination claim) at all. Indeed, Goodloe's brief does not identify who his comparators are, why he contends those individuals satisfy the relevant legal standard, or how he has established a *prima facie* case of wage discrimination. He neither references nor addresses Count VI, much less Daphne Utilities' asserted ground for summary judgment as to that cause of action. Such an omission is at his peril. To be sure, "the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, … but must ensure that the motion itself is supported by evidentiary materials." *United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). It is also true, however, that "district courts cannot concoct or resurrect arguments neither made nor advanced by the parties." *Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011).[14]

---

[13] *See also Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1533 n.18 (11th Cir. 1992) (in pay discrimination cases, "[f]actors such as experience and education operate as a defense to liability rather than as part of a plaintiff's *prima facie* case"); *Sharpe v. Global Sec. Int'l*, 766 F. Supp.2d 1272, 1295 (S.D. Ala. 2011) (in Title VII context, "a plaintiff satisfies his *prima facie* burden of comparability simply by showing that he 'occupies a job similar to that of higher paid' persons outside the protected class") (citing *Meeks v. Computer Associates Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994)).

[14] *See also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based on the materials before it on summary judgment. … Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."); *Quinn v. Deutsche Bank Nat'l Trust Co.*, 2014 WL 977632, *6 (S.D. Ala. Mar. 12, 2014) (in performing summary judgment analysis on issues to which no response has been made, "a court is not obligated to read minds and ordinarily will not construct arguments or theories that a party has failed to raise"); *Godfrey v. Nationwide Vinyl Siding & Home Imp., LLC*, 912 F. Supp.2d 1320, 1330 (S.D. Ala. 2012) ("On summary judgment, the
(Continued)

Upon careful review of Goodloe's brief (doc. 88), the undersigned concludes that the only possible comparator identified therein as to the Count VI wage discrimination claim is a white employee named David Sadberry, whom Daphne Utilities hired a few months before employing Goodloe on a full-time basis. (Doc. 88, at 4, 12.) Plaintiff objects in his brief that Daphne Utilities compensated Sadberry at a higher point on the pay scale than it did Goodloe, despite the latter's greater education and experience. (*Id.*) Thus, it appears (although Goodloe never said as much on summary judgment) that Sadberry is the comparator anchoring his *prima facie* case of wage discrimination.

The record does not support any contention that Sadberry is a similarly situated comparator to Goodloe for a *prima facie* case of wage discrimination. Sadberry was hired as Maintenance Manager, responsible for maintaining Daphne Utilities' facilities and infrastructure, with supervisory authority over at least seven employees in the maintenance division. (Goodloe Dep., at 47-48.) By contrast, Goodloe was hired as Payroll/Benefits Coordinator/Trainer, whose duties were "to assist the Human Resources Manager in administering human resources programs and functions and to coordinate payroll administration, benefits administration, training and related functions." (Klumpp Aff. (doc. 82, Exh. 2), ¶ 2 & Exh. A.) Goodloe did not supervise any employees. (Goodloe Dep., at 48.) In the Daphne Utilities 16-grade pay scale, Sadberry's position was assigned Grade 11, while Goodloe's was assigned Grade 6. (Klumpp Aff., ¶ 8 & Exh. D.) On their face, these facts demonstrate that Sadberry and Goodloe performed vastly dissimilar tasks, such that Sadberry is not a viable comparator to Goodloe for purposes of establishing a *prima facie* case of wage discrimination. Again, Goodloe has not responded to such an argument, much less explained why (or even if) he believes Sadberry falls within the legal parameters of a comparator for his *prima facie* case.

Because the lone potential comparator mentioned in his summary judgment brief is not viable, and because he has articulated no other argument through which he might prevail,

---

Court cannot 'fill in the blanks' to formulate a legal argument that a party has not."); *Pears v. Mobile County*, 645 F. Supp.2d 1062, 1081 n.27 (S.D. Ala. 2009) ("The parties ... cannot be heard to balk if the undersigned does not perform their research and develop their arguments for them."); *Minemyer v. B–Roc Representatives, Inc.*, 695 F. Supp.2d 797, 809 (N.D. Ill. 2009) ("[T]his is an adversarial system. It is not a court's task to research legal arguments on a party's behalf").

Goodloe has failed to satisfy the "similarly situated comparator" prong of his *prima facie* burden.[15] Perhaps other arguments could have been made as to potential comparators; however, plaintiff has not voiced them, and has not explained why, given defendant's unrebutted evidence of dissimilarity, any of those persons would be properly deemed comparators. Likewise, perhaps other arguments could have been made for establishing plaintiff's case without comparators. *See generally Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) ("the plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case" on summary judgment). Again, plaintiff made no such assertions. This Court will not "fill in the blanks" to make plaintiff's arguments for him as to which white employees might pass as comparators, how and why they might meet the "similarly situated" test (notwithstanding defendant's evidence to the contrary), or how he might overcome summary judgment without comparators. *See Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009) (noting that a litigant "cannot readily complain about the entry of a summary judgment order that did not consider an argument they chose not to develop for the district court at the time of the summary judgment motions") (citation omitted).

---

15 To be sure, there are references in the record (albeit not in plaintiff's brief) to various other white employees whom Goodloe contends were paid more than he was. The Court has no idea – because plaintiff has not said – whether Goodloe purports to rely on any of these individuals as comparators on summary judgment to bolster his *prima facie* case. Defendant's uncontroverted evidence is that (i) none of these white employees worked in the same position that Goodloe did, and (ii) many of these white employees were employed in supervisory positions at higher grade levels on the Daphne Utilities pay scale. Such persons would appear unsuitable as comparators. Moreover, insofar as Goodloe balks that Daphne Utilities hired white individuals at the "mid to high point of the pay scale" (Goodloe Decl., at 6), his wage discrimination claim fails because he was hired very close to the midpoint of the applicable pay scale. Undisputed record evidence shows that Goodloe's job (which he says was Payroll/ Benefits Coordinator/Trainer) was in Grade 6 of defendant's pay scale, with a salary range of between $30,895 to $43,253 for the year 2013. (Klumpp Aff., at ¶ 8 & Exh. D.) Goodloe was hired in December 2012 at an hourly rate of $17.31, "which equates with an annual pay of approximately $36,004." (Doc. 110, Exh. 3.) Thus, Daphne Utilities paid Goodloe a starting wage that was just slightly below the midpoint of the Grade 6 pay scale. This fact belies plaintiff's claim of disparate treatment predicated on the notion that Daphne Utilities hired white employees at the "mid to high point of the pay scale," inasmuch as Goodloe himself was hired at nearly the exact midpoint of his pay grade. Goodloe cannot advance a viable wage discrimination claim based on white employees with patently dissimilar job duties or nearly identical "midpoint" starting salaries.

For all of these reasons, defendant's Motion for Summary Judgment is **granted** as to Goodloe's wage discrimination claim found at Count VI of the Amended Complaint. That claim will be **dismissed** for failure to establish a *prima facie* case.

***C. Retaliation Claim.***

Goodloe's other cause of action is Count VII, a retaliation claim brought under 42 U.S.C. §§ 1981 and 1983. This claim is framed in the pleadings as follows: "By terminating … Goodloe's employment due to his complaints of racial unfairness on the job the defendant has violated 42 U.S.C. Section 1981, and the Due Process Clause of the 14th Amendment to the United States Constitution made actionable by 42 U.S.C. Section 1983." (Doc. 6, ¶ 55.)[16]

As an initial matter, Daphne Utilities seeks dismissal of Count VII by reasoning that (i) a § 1981 retaliation claim is actionable only through § 1983 as to Daphne Utilities, (ii) no constitutional right to equal protection is implicated by the alleged retaliation, and (iii) absent a viable constitutional claim, Goodloe cannot proceed under either § 1981 or § 1983 on his retaliation theory. (*See* doc. 81, at 25-26.) The Court disagrees. To be sure, it appears that Daphne Utilities, as a municipal utility, qualifies as a "state actor," such that Goodloe must use the § 1983 mechanism to pursue relief for a § 1981 violation. *See, e.g., Butts v. County of Volusia*, 222 F.3d 891, 893 (11th Cir. 2000) ("§ 1983 constitutes the exclusive remedy against state actors for violations of the rights contained in § 1981").[17] It is also true, however, that § 1981 and Title VII claims have the same elements, and that "Title VII and section 1983 claims have the same elements where the claims are based on the same set of facts." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1275 n.5 (11th Cir. 2008). Daphne Utilities would have this Court disregard that principle and engraft additional elements on § 1981 retaliation claims brought

---

[16] Goodloe has since admitted that his "Due Process" claim "was an error" and that he instead intended to bring an equal protection claim. (*See* doc. 100.) He has also acknowledged that he has no viable retaliation claim on an equal protection theory. (Doc. 88, at 19.) In light of those concessions, the constitutional aspects of Goodloe's retaliation claim are **dismissed**. What remains is the portion of Goodloe's retaliation claim alleging a § 1981 violation through the vehicle of § 1983.

[17] *See also Campbell v. Forest Preserve Dist. of Cook County, Ill.*, 752 F.3d 665, 671 (7th Cir. 2014) ("§ 1983 remains the exclusive remedy for violations of § 1981 committed by state actors"); *Brown*, 459 Fed.Appx. at 818-19 ("Claims against state actors under § 1981 must be brought pursuant to 42 U.S.C. § 1983.").

against state actors. Under Daphne Utilities' theory, a plaintiff complaining of § 1981 retaliation by a state actor could not prevail without establishing both a § 1981 violation and an additional constitutional violation. The Court is aware of no authority embracing such an onerous, counterintuitive requirement, and Daphne Utilities has cited none.[18] Rather, it has long been recognized that a violation of § 1981 is all that is necessary for a plaintiff to succeed on a § 1983 claim against a state actor. *See, e.g., Whiting v. Jackson State University*, 616 F.2d 116, 121 (5th Cir. 1980) ("Section 1983 serves as a basis for relief for violations of federal law under color of state law. Insofar as it is used as a parallel remedy for transgression of section 1981 …, the elements of the causes of action do not differ ….").  For all of these reasons, the Court rejects as contrary to law defendant's argument that Goodloe must prove something more than an ordinary § 1981 retaliation claim in order to hold Daphne Utilities liable pursuant to § 1983.[19]

Next, Daphne Utilities urges dismissal of Count VII for failure to make out a *prima facie* case. To establish a *prima facie* case of retaliation under § 1981, Goodloe must show that "(1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) he established a causal link between the protected activity and the adverse action." *Bryant v. Jones*, 575 F.3d 1281, 1307-08 (11th Cir. 2009); *see also Butler v. Alabama Dep't of Transp.*, 536 F.3d 1209, 1212-13 (11th Cir. 2008) ("To establish a claim of retaliation under Title VII or section 1981, a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events.") (citation omitted). Defendant does not challenge Goodloe's ability to satisfy the second and third

---

[18] In its principal brief, Daphne Utilities erroneously relies on *Braswell v. Allen*, 586 F. Supp.2d 1297 (M.D. Ala. 2008), for this point. (*See* doc. 81, at 26.) In fact, the *Braswell* court examined the plaintiff's § 1981 retaliation claim against state-actor defendants through the lens of § 1983, but said nothing about the plaintiff having to prove up a constitutional deprivation above and beyond the § 1981 violation in order to sustain a viable claim under § 1983. *See* 586 F. Supp.2d at 1310-11. To the contrary, that court acknowledged that "Title VII, section 1981 and section 1983 claims ***have the same legal elements*** when the claims are based on the same set of facts." *Id.* at 1308 (emphasis added).

[19] Of course, it is pellucidly clear that a plaintiff may sue under § 1981 for retaliation. *See, e.g., CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457, 128 S.Ct. 1951, 170 L.Ed.2d 864 (2008) ("We consequently hold that 42 U.S.C. § 1981 encompasses claims of retaliation."); *Bryant v. Jones*, 575 F.3d 1281, 1309 (11th Cir. 2009) ("it is well-established in this circuit that claims for retaliation are cognizable pursuant to § 1981").

prongs.[20] However, Daphne Utilities does maintain that Goodloe did not engage in protected activity (as required by the first prong), inasmuch as "he cannot show an objectively reasonable perception he was opposing an unlawful employment practice." (Doc. 81, at 28.)

A Title VII / Section 1981 plaintiff complaining of retaliation need not prove that he opposed an employment law practice that was actually unlawful; rather, the plaintiff need only show "that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices. … A plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented." *Dixon v. The Hallmark Companies, Inc.*, 627 F.3d 849, 857 (11th Cir. 2010) (citation omitted); *see also Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010). Thus, the critical question is whether Goodloe had a subjectively and objectively reasonable basis for complaining of race discrimination at Daphne Utilities on the morning of March 27, 2013, so as to constitute protected activity.

The sum total of Daphne Utilities' summary judgment argument that Goodloe cannot satisfy this element is a conclusory statement that it "was not objectively reasonable" for Goodloe to believe that Daphne Utilities was engaged in unlawful employment practices. (Doc. 81, at 28-29.) This contention is not persuasive. After all, binding precedent leaves no doubt that "the plaintiff's *prima facie* burden is not onerous." *Vessels v. Atlanta Independent School System*, 408 F.3d 763, 769 (11th Cir. 2005); *see also Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998) ("a plaintiff's burden in proving a *prima facie* case is light"). Goodloe's evidence shows that, on the morning of his discharge, he presented Lyndall with specific, detailed examples of circumstances in which he believed Daphne Utilities treated black employees less favorably than their white counterparts, including (i) differential enforcement of call-in notification policies, (ii) differential compensation of Goodloe as compared to a white

[20] Nor could Daphne Utilities have effectively argued otherwise. After all, it cannot be seriously disputed that termination of employment constitutes an "adverse employment action." Furthermore, Goodloe's evidence that he was fired within hours after complaining to his supervisor of racially discriminatory practices establishes the necessary "causal link." *See, e.g., Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action.").

employee (Sadberry), and (iii) co-worker Carlos Butler's grievance alleging widespread racial disparities in annual raises in the Wastewater Field Services Department. Irrespective of whether such matters actually constituted racially discriminatory employment practices, the record reveals a sufficient factual basis for concluding that Goodloe harbored a good-faith, reasonable belief that they were. These record facts (which are not countered by any persuasive argument from Daphne Utilities that Goodloe lacked an objectively reasonable basis for his remarks) satisfy the "statutorily protected activity" prong of plaintiff's *prima facie* case. Simply put, it was protected activity for Goodloe to notify Lyndall of what he believed to be systematic differences in how Daphne Utilities compensated and disciplined employees of different races, and to place Lyndall on notice of Goodloe's intention to raise such concerns to the Board.

Goodloe having met his initial burden of showing a *prima facie* case of retaliation in violation of § 1981 (through § 1983), the burden of production shifts to Daphne Utilities to set forth a legitimate, nonretaliatory reason for terminating Goodloe's employment. Daphne Utilities has done so, via Lyndall's averments that Goodloe was fired because he "was only marginally effective in his payroll and benefits duties," he had "probationary status," and he had displayed an "argumentative attitude and mediocre performance." (Lyndall Aff., ¶ 4.)

Where, as here, the employer articulates legitimate reasons for the challenged actions, the plaintiff must "show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct." *McCann v. Tillman*, 526 F.3d 1370, 1375 (11th Cir. 2008) (citation omitted). "In order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual." *Chapman v. AI Transport*, 229 F.3d 1012, 1037 (11th Cir. 2000). To show that the stated reason is pretext for unlawful retaliation, the plaintiff "must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Vessels*, 408 F.3d at 771 (quotation omitted).[21]

---

[21]   *See also Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010) (plaintiff may satisfy burden of showing pretext "by showing that [defendant's] proffered reasons are not credible"); *Rioux*, 520 F.3d at 1278 ("The plaintiff must demonstrate (Continued)

Weaknesses, implausibilities and inconsistencies in Daphne Utilities' proffered explanations abound. Lyndall's statement that Goodloe was fired for "mediocre performance" because he was "only marginally effective" at his job encounters stiff headwinds in the record. If Goodloe was "mediocre" and "marginally effective" in performing payroll and benefits duties, then why did Daphne Utilities hire him on a full-time basis in December 2012 (three months before he was fired) when he had been performing those same duties for approximately six years in a contract / temp capacity? Defendant does not say. Also, Daphne Utilities has not pointed to a scrap of paper or an iota of testimony that Goodloe had ever been disciplined, reprimanded, counseled, coached or spoken to by Lyndall or anyone else concerning alleged performance deficiencies during that three-month period, or indeed the five years that preceded it.[22] To the contrary, Lyndall emphatically testified that Goodloe "was a great employee" and remained so "[i]n all the times" that Lyndall had known him. (Lyndall Dep., at 76.) There is an obvious tension between Lyndall's statement that Goodloe was fired for being a "marginal" or "mediocre" performer, on the one hand, and Lyndall's deposition testimony that Goodloe had always been a "great employee," on the other. What's more, Lyndall testified that he considered Goodloe to be a "friend." (*Id.*) If a supervisor's "friend" were underperforming, one might reasonably expect the supervisor to alert that "friend" to the problem before summarily showing him the door. Yet plaintiff's evidence is that Lyndall did not. These kinds of inconsistencies and implausibilities support a pretext determination on summary judgment.

More generally, Daphne Utilities' proffered explanation is so vague that it essentially amounts to a label devoid of underlying factual content that might lend credence to it. The Termination Notice stated only that Goodloe "has not met the required performance standards" (doc. 90, Exh. B), without offering any inkling as to how and in what respects Goodloe's

---

weaknesses or implausibilities in the employer's proffered legitimate reasons for its action sufficient for a reasonable factfinder to disbelieve the reasons.").

[22]  To be sure, it does not appear that Daphne Utilities' policies required it to engage in any progressive discipline / formal counseling of probationary employees such as Goodloe. Nonetheless, common sense suggests that if Daphne Utilities really had a problem with Goodloe's performance, Lyndall would have mentioned it prior to his termination meeting. Plaintiff's evidence is that no such communications ever happened, and that the Termination Notice was his first indication of Daphne Utilities' purported dissatisfaction with his work.

performance had been substandard. Similarly, Lyndall's use of the terms "mediocre" and "marginal" conveys virtually nothing about what he maintained Goodloe was doing wrong. The cursory, shadowy, nonspecific nature of the explanation itself calls into question its credibility in the pretext analysis.[23]

The bottom line is this: Goodloe's version of the evidence is that he was a well-liked employee who had successfully performed payroll and benefits work for Daphne Utilities for years, with such diligence and acumen that Daphne Utilities rewarded him with a full-time job in December 2012, performing the same duties. Goodloe was on friendly terms with his supervisor, who characterized him as a "great employee," and had not been alerted to any performance deficiencies by anyone at Daphne Utilities since 2007. Then, one day, Goodloe complained to his supervisor of multiple instances of what he believed to be race-based disparities in how the company treated black and white employees. He notified his supervisor that he intended to bring these matters up to the Board. Hours later, Daphne Utilities summarily fired Goodloe, citing "marginal" and "mediocre performance." A reasonable finder of fact could conclude that Daphne Utilities' stated reasons for terminating Goodloe's employment were pretextual, and that the real reason was his statutorily protected activity, to-wit: complaining of alleged racially discriminatory employment practices at Daphne Utilities.

[23] Lyndall's Affidavit also cites Goodloe's "argumentative attitude" as a reason for firing him. (Goodloe Aff., ¶ 4.) However, the Termination Notice says nothing about attitude problems; thus, there is an apparent tension/inconsistency between what Daphne Utilities wrote in the Termination Notice and what Lyndall now says is the reason for discharging Goodloe. Furthermore, the only "argument" mentioned by Lyndall's Affidavit is the conversation on March 27, 2013, in which Goodloe complained of alleged racially discriminatory practices. Saying that Goodloe was terminated for having an argumentative attitude on March 27 sounds uncomfortably close to saying that he was terminated for arguing with his supervisor about his reasonable belief of race discrimination, which would of course violate § 1981's prohibition on retaliation. Plaintiff's evidence is that Goodloe did not conduct himself in an inappropriate, insubordinate or unprofessional manner during the conversation with Lyndall, and that he never raised his voice. For all of these reasons, Lyndall's post-termination reference to "argumentative attitude" as a justification for Goodloe's firing raises genuine issues of material fact as to whether that reason was a pretext for unlawful retaliation or, worse, "code" for retaliation itself.

For all of these reasons, defendant's Motion for Summary Judgment is **denied** as to the retaliation claim brought by Goodloe pursuant to 42 U.S.C. § 1981, by and through the procedural vehicle of 42 U.S.C. § 1983, in Count VII of the Amended Complaint.[24]

**IV. Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1. Defendant's "Motion to Strike and Correct a Portion of Plaintiff Cedric Goodloe's Response in Opposition to Defendant's Motion for Summary Judgment" (doc. 108) is **denied**;
2. Defendant's Motion for Summary Judgment (doc. 80) is **granted in part**, and **denied in part**;
3. Plaintiff's claim of wage discrimination (Count VI) is **dismissed** because there are no genuine issues of material fact and defendant is entitled to judgment as a matter of law;
4. Plaintiff's claims of due process and/or equal protection violations in his retaliation claim (Count VII) are **dismissed**;
5. The Motion for Summary Judgment is **denied** as to the remainder of Count VII, a claim brought under 42 U.S.C. § 1983 in which plaintiff alleges that defendant violated 42 U.S.C. § 1981 by firing him in retaliation for statutorily protected activity (complaining of racially discriminatory employment practices); and
6. The Motion for Summary Judgment is **denied** as to punitive damages because the Amended Complaint reflects that no such damages are sought herein.

DONE and ORDERED this 24th day of March, 2015.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[24] At the end of its principal brief, Daphne Utilities contends that it is entitled to judgment as a matter of law on "any claim for" punitive damages that Goodloe is asserting. (Doc. 81, at 30.) The Amended Complaint is devoid of any reference to punitive damages; rather, the *ad damnum* clause requests that Goodloe be awarded a declaratory judgment; $300,000 in compensatory damages; back pay and benefits dating back to the termination of his employment; and costs and fees. (Doc. 6, at 10-11.) As the Amended Complaint lacks any indication that punitive damages are being sought, Daphne Utilities' Motion for Summary Judgment is **denied** insofar as it seeks dismissal of a nonexistent element of damages.