IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **VONEKA Q. NETTLES,** *et al.***,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | CIVIL ACTION 13-0605-WS-C |
| ) | |
| **DAPHNE UTILITIES,** ) | |
| ) | |
| **Defendant.** ) | |

**ORDER**

This matter comes before the Court on defendant's Motion for Summary Judgment (doc. 74) with respect to the claims of plaintiff Carlos Butler. The Motion has been briefed and is now ripe for disposition.

**I.     Relevant Background.**

Carlos Butler is one of three plaintiffs who brought this action alleging race-based employment discrimination by defendant, Daphne Utilities.[1] As pleaded in the Amended Complaint, Butler, who is African-American, has asserted a single claim of discriminatory evaluation / denial of a raise. Specifically, in Count V, Butler alleges that Daphne Utilities violated 42 U.S.C. § 1981, the Due Process Clause and 42 U.S.C. § 1983 "by failing to properly evaluate Plaintiff Carlos Butler's job performance, and thereby, denying him an annual raise." (Doc. 6, ¶ 53.) Daphne Utilities now seeks entry of summary judgment in its favor as to Count V on the grounds that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.

---

[1] The other two plaintiffs, Cedric Goodloe and Voneka Nettles, assert claims that are factually (and in some instances, legally) distinct from Butler's. In light of the individual-specific nature of each plaintiff's claims, the Court has ordered separate trials for each plaintiff. (*See* doc. 18.) Defendant filed three plaintiff-specific Motions for Summary Judgment, each of which has been briefed independently. This Order is confined to the claims of plaintiff Butler, and neither considers nor adjudicates the claims of plaintiffs Goodloe or Nettles.

The pertinent record facts are as follows:[2] Daphne Utilities hired Butler as a Wastewater Field Service Worker on or about October 5, 2006. (Butler Dep. (doc. 76, Exh. 2), at 11, 51-52.) In this capacity, Butler reported directly to Woodrow Maye, an African-American whose title was Wastewater Field Services Supervisor. (Lyndall Aff. (doc. 76, Exh. 1), ¶ 3; Butler Dep., at 11.) Some time in 2012, Maye's supervisor, Larry Jackson, was reassigned elsewhere in the company, after which Maye reported directly to Danny Lyndall, the Operations Manager at Daphne Utilities, for a period of time. (Lyndall Aff., ¶¶ 2-4.)[3] In October 2012, Daphne Utilities performed a reorganization, pursuant to which a white employee named Jim Caudle (who had previously overseen the Water Reclamation Department for several years) became the supervisor of the entire Wastewater Department, including both the Water Reclamation and the Wastewater Collection sections. (*Id.*, ¶ 5.) As a result of this change (which Daphne Utilities has justified via legitimate business reasons and to which Butler has ascribed no discriminatory motive), Maye reported directly to Caudle, who in turn reported to Lyndall. (*Id.*, ¶ 5 & Exh. A.)

Prior to this reorganization, Maye had already prepared annual performance evaluations for the employees under his supervision, including Butler. (Jackson Decl. (doc. 102, Exh. A), at 1.) Maye's evaluation of Butler's performance rated him a "4" (meaning "exceeds expectations") in five listed categories. (Doc. 76, Exh. 3 at Exh. 2.)[4] Jackson's practice had

---

[2] The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). Thus, Butler's evidence is taken as true and all justifiable inferences are drawn in his favor. Also, federal courts cannot weigh credibility at the summary judgment stage. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices."). Therefore, the Court will "make no credibility determinations or choose between conflicting testimony, but instead accept[s] [Butler's] version of the facts drawing all justifiable inferences in [his] favor." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).

[3] In his summary judgment brief, Butler denies that any such temporal gap occurred following Jackson's departure or that Jackson was ever reassigned to a different position prior to his December 2012 retirement. (Doc. 102, at 3.) Such discrepancies need not be explored here, as they are not material to the issues presented on summary judgment.

[4] There appears to be a missing page from the mostly-illegible copy of Maye's draft evaluation of Butler contained in the court file. (*Id.*)

been to review those evaluations and then forward them to Human Resources along with his recommendations for raises. (Jackson Decl., at 1.) Following the October 2012 reorganization of the department, the evaluation for Butler prepared by Maye never took effect because performance evaluations for Wastewater Collection employees became subject to a new procedure.

After Caudle assumed managerial responsibilities for the Wastewater Collection Department, he personally prepared performance evaluations for all Collection Systems workers, with input from Maye, in December 2012. (Caudle Aff. (doc. 76, Exh. 5), ¶¶ 4-5.)[5] The resulting final evaluation for Butler, dated December 27, 2012, was both more comprehensive and less favorable than the Maye draft had been. For example, Caudle rated Butler a "2" ("below expectations") for quality of work, indicating, "Carlos needs to communicate more effectively with supervision and management." (Caudle Aff., ¶ 6 & Exh. A, at 1.) Likewise, Caudle rated Butler a "2" for initiative/enthusiasm, writing, "Carlos appears to be reserved in the morning staff meetings …[and] needs to demonstrate his knowledge in helping the department grow." (*Id.* at 2.) In the category of safety and housekeeping, Caudle awarded Butler a score of "1," writing, "The maintenance, appearance, and cleanliness of all vehicles in this department fall well below acceptable standards." (*Id.* at 3.) Overall, Caudle gave Butler a performance rating of 2.6 (slightly below "meets expectations").[6]

---

[5] Plaintiff objects that "Maye had no input into Caudle's evaluations." (Doc. 102, at 4.) This assertion is not credited because plaintiff provides no evidentiary support for it other than the Declaration of Carlos Butler (doc. 103, at 2), which lacks any discernible foundation establishing Butler's personal knowledge. Without some indication that Butler actually had firsthand knowledge about whether Caudle obtained input from Maye, such a conclusory remark in his Declaration does not pass muster under Rule 56(c)(4), Fed.R.Civ.P., and is not properly considered. Besides, plaintiff's assertion that Maye lacked input into Caudle's evaluations is contradicted elsewhere in plaintiff's own brief, wherein he acknowledges that "Maye gave Caudle the evaluations of all the employees he supervised." (Doc. 102, at 26.)

[6] In subsequent documentation, Caudle identified additional specifics in support of the Butler evaluation. According to Caudle, "Butler exhibited a negative attitude when changes and improvements were suggested," even telling Caudle that he (Butler) could learn nothing from Caudle as to field services work. (Caudle Aff., ¶ 6.) Caudle further maintained that Butler "was unresponsive and uninvolved during staff meetings," "was sleeping during morning meetings," "was taking longer than allowed lunch breaks," and was failing to complete daily schedules, clean tools, secure trucks, and follow safety protocols. (*Id.*) For his part, Butler (Continued)

Performance evaluations at Daphne Utilities matter because they are tied to compensation. Defendant has no precise numerical formula for translating evaluations into raises. (Butler Decl., at 2.) Nonetheless, Daphne Utilities utilizes a merit raise system, pursuant to which employees are awarded pay increases solely on the basis of performance, as opposed to step increases or raises linked to years of service. (Caudle Aff., ¶ 6.) In Caudle's view, "Carlos Butler's unacceptable performance in 2012 did not merit a raise." (*Id.*) Butler was called into a meeting with Caudle and Maye, at which time he was shown both the final evaluation that Caudle had prepared and the earlier Maye version. (Butler Dep., at 20-21.)[7] At that time, Butler expressed disagreement with the numerical scores on the Caudle evaluation, and declined to sign the document. (*Id.* at 21-22, 26.) Caudle notified Butler that, based on the unfavorable evaluation, Butler was ineligible for a merit raise. (*Id.* at 24.)

Multiple other Wastewater Collection employees fared better in the December 2012 evaluation process, receiving positive performance evaluations from Caudle, along with pay raises. At the time the evaluations were done, there were five employees in that department: Butler, James McPherson, Jay Bivins, Sybil Williams and supervisor Woodrow Maye. (Caudle Aff., ¶ 5.) With one exception, Caudle prepared evaluations for these individuals in late 2012, following which McPherson and Bivins were awarded raises based on those evaluations. (*Id.*, ¶ 7.) The exception was Maye, who did not receive a performance evaluation in 2012. (Lyndall Aff. II (doc. 117, Exh. 4), ¶ 2.) Maye's evaluation was delayed until the middle of 2013 pending an accident investigation and related litigation, following which he too was awarded a raise

---

maintains that these alleged deficiencies lack any factual basis and amount to complete fabrications. (Butler Decl. (doc. 103), at 3.)

[7]     Butler asserts that he "was the only employee to receive two evaluations," one from Maye and one from Caudle. (Butler Decl., at 3.) This statement is not credited because it flunks Rule 56(c)(4)'s personal knowledge prerequisite for summary judgment declarations (*i.e.*, how would Butler have personal knowledge whether his co-workers received two evaluations in their meetings with Caudle?). Besides, plaintiff contradicts this remark in his own brief by acknowledging that "Mr. Maye had prepared 2012 evaluations for his workers prior to Mr. Caudle's re-evaluations." (Doc. 102, at 4.) By plaintiff's own admission, then, he was treated no differently than his colleagues in this regard. At any rate, competent record evidence confirms that all Wastewater Collection employees were given both the Maye draft and the Caudle evaluation during their performance reviews. (Maye Statement (doc. 117, Exh. 2), at 27.)

retroactive to 2012. (Caudle Aff., ¶ 7; Lyndall Aff. II, ¶ 2.) Williams did not receive a raise in December 2012; however, she was awarded a raise retroactive to 2012 after demonstrating improvement on her mid-year evaluation in 2013. (*Id.*)[8] After accounting for mid-year 2013 evaluations, Butler was the only Wastewater Collection Department employee to whom Caudle did not award a merit raise, effective December 2012. The Wastewater Collection employees who did receive raises (Maye, McPherson, Bivins and Williams) are all African-American. (Doc. 102, at 11.)

In the wake of this disappointment, Butler exercised his rights under Daphne Utilities policies to contest Caudle's December 2012 evaluation of his performance. At his request, Daphne Utilities convened multiple meetings involving Butler and various company officials (including Caudle, Lyndall, HR Manager Deloris Brown, and others). (Butler Decl., at 3-5; Butler Dep., at 28-33, 35-37, 40-42.) At some point during this series of meetings and conferences, Butler filed a formal grievance, invoking the specific mechanism recognized by Daphne Utilities policy. (Butler Dep., at 39-40.) In a written grievance dated April 8, 2013, Butler explained, "It is my position that Mr. Maye should have been the one rating my job performance, and not Mr. Caudle." (Doc. 76, Exh. 3, at 3.) Butler further balked that Caudle "has never during the rating period in question, supervised or witnessed any job tasks" performed by Butler, and "hade [*sic*] no knowledge of [Butler's] work performance, which made him unqualified" to issue the December 2012 evaluation. (*Id.*) Butler concluded, "I personally believe that the denial of the pay raise … is discriminatory in nature and creates a hostile working environment." (*Id.* at 4.)

After a lengthy, multifaceted investigation, Daphne Utilities General Manager Rob McElroy issued a written memo to Butler on June 6, 2013, summarizing his findings. In that document, McElroy chided Butler that "[n]o employee of Daphne Utilities chooses who ultimately oversees the department and conducts their performance evaluations; instead, management makes these decisions." (Doc. 76, Exh. 8, at 1.) McElroy elaborated that Caudle was selected for the task "with the knowledge and understanding that [he] had only been the manager for two months prior to the evaluation," and opined that, in McElroy's view, "two

---

[8] By contrast, at a meeting with Caudle and Maye after his mid-year evaluation, Caudle notified Butler that he still would not receive a raise. (Butler Dep., at 39.)

months is a sufficient time" for a manager to observe and evaluate employee performance. (*Id.* at 2.) Ultimately, McElroy found that Caudle "was competent to oversee [Butler's] performance evaluation, and, that there are no facts which suggest that his supervision was tainted by some improper discriminatory motive." (*Id.*)[9]

This lawsuit followed, with Butler alleging that his poor evaluation and accompanying denial of merit raise were the product of unlawful race discrimination by Daphne Utilities. In opposing defendant's Motion for Summary Judgment, Butler states, "My only issue was that I should not have been evaluated by someone who had not supervised or otherwise observed my daily performance." (Butler Decl., at 6.)[10]

## II.     Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make

---

[9]     Sometime later, Daphne Utilities requested that Edward McDermott, Esq., conduct an investigation into the processing of Butler's grievance. (McElroy Aff. (doc. 76, Exh. 6), ¶ 7.) McDermott's report questioned whether, under company policies and procedures, Butler's grievance should have been decided by Deloris Brown (the HR Manager) rather than McElroy (the General Manager); however, he also concluded, "There are no factual bases for Butler's allegations that Caudle's ratings and denial of a pay raise were racially discriminatory and created a hostile working environment." (*Id.*, ¶ 7 & Exh. F, at 11.)

[10]    Clearly, then, the issue of whether Caudle (as opposed to someone else) should have completed Butler's performance evaluation is central to plaintiff's discrimination claim. In its reply brief, Daphne Utilities decries this argument as "a bait and switch," objecting that "Butler's complaint is he did not receive a raise" (doc. 116, at 2) and that he somehow changed gears on summary judgment by focusing on the evaluation and evaluator. Such criticism is unfounded. The Amended Complaint leaves no doubt that Butler is complaining about both the alleged failure "to properly evaluate Plaintiff Carlos Butler's job performance" and the denial of an annual raise. (Doc. 6, ¶ 53; *see also id.*, at ¶¶ 21, 24, 29.) The manner in which his performance evaluation was conducted is and has always been part and parcel of this lawsuit; therefore, defendant could not have been unfairly surprised by the nature of plaintiff's summary judgment arguments.

'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

      The Eleventh Circuit has expressly rejected the notion that summary judgment should seldom be used in employment discrimination cases because they involve issues of motivation and intent.  *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079 (11th Cir. 2004).  Rather, "the summary judgment rule applies in job discrimination cases just as in other cases.  No thumb is to be placed on either side of the scale." *Id.* at 1086 (citation omitted); *see also Williamson v. Clarke County Dep't of Human Resources*, 834 F. Supp.2d 1310, 1318 (S.D. Ala. 2011) (recognizing and applying rule that summary judgment standard is applied equally in employment discrimination cases as in other kinds of federal actions).

**III.    Analysis.**

      ***A.***     ***The* McDonnell Douglas *Standard.***

      Absent direct evidence of discrimination,[11] Butler must make a showing of circumstantial evidence that satisfies the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[12]  Under this familiar burden-shifting analysis, plaintiff is

---

      [11]     Plaintiff's deposition testimony confirms that he has no such direct evidence.  Indeed, Butler repeatedly testified that neither Caudle nor any other Daphne Utilities manager had ever used language that he viewed as racially motivated in connection with this incident. (Butler Dep., at 22, 33, 41, 62-63.)

      [12]     Although plaintiff's claims are nominally brought under 42 U.S.C. § 1981 and 42 U.S.C. § 1983, both sides properly recognize that the applicable legal standard is identical (doc. 75, at 9-10, 16; doc. 102, at 20-23).  *See, e.g., Brown v. Alabama Dep't of Transportation*, 597 F.3d 1160, 1174 n.6 (11th Cir. 2010) ("The analysis under [§ 1981] claims mirrors that under Title VII."); *Rice-Lamar v. City of Fort Lauderdale, Fla.*, 232 F.3d 836, 843 n.11 (11th Cir. (Continued)

required to make out a *prima facie* case of race discrimination. If he does so, that showing "creates a rebuttable presumption that the employer acted illegally." *Underwood v. Perry County Com'n*, 431 F.3d 788, 794 (11th Cir. 2005). At that point, "the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. ... If the employer does this, the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext for discrimination." *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008) (citations and internal quotation marks omitted); *see also Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997) (outlining similar procedure for Title VII retaliation claims). A plaintiff may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Brooks v. County Com'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quotation omitted). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Springer v. Convergys Customer Management Group Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007).

### B. Plaintiff's Claim of Discriminatory Evaluation / Denial of Raise.

In Count V of the Amended Complaint, Butler asserts a claim that Daphne Utilities failed properly to evaluate his job performance and denied him an annual raise, all in violation of 42 U.S.C. §§ 1981 and 1983. Although both the evaluation and the denial of raise are recited in the

---

2000) ("The elements of a section 1983 claim of race or gender discrimination are the same as the elements of a Title VII disparate treatment action. … The elements of a claim of race discrimination under 42 U.S.C. § 1981 are also the same as a Title VII disparate treatment claim in the employment context."); *Whiting v. Jackson State University*, 616 F.2d 116, 121 (5th Cir. 1980) ("Section 1983 serves as a basis for relief for violations of federal law under color of state law. Insofar as it is used as a parallel remedy for transgression of section 1981 and section 706 of Title VII rights, the elements of the causes of action do not differ ….""); *Brown v. School Bd. of Orange County, Florida*, 459 Fed.Appx. 817, 819 (11th Cir. Feb. 28, 2012) ("Title VII and § 1981 have the same requirements of proof and utilize the same analytical framework."). The parties have not argued that the analysis differs for any of the various species of claims that Butler is asserting, save for the Due Process claim (nominally recited in the Amended Complaint) which he now disclaims any intent to pursue. (*See* doc. 76, Exh. 10, at #13; doc. 100; doc. 102, at 15.) Nor does plaintiff contend that the analytical framework or legal standard would differ if he were proceeding under an Equal Protection theory, as he seeks to do by separate motion.

pleadings, Butler's claim hinges on the evaluation. That is to say, Butler does not suggest that, even if his performance evaluation was not racially discriminatory, Daphne Utilities' failure to award him a merit raise in 2012 would remain actionable in Count V. To the contrary, Butler's position is that the performance evaluation was the product of race discrimination, and that the decision to deny him a raise flowed directly from the biased evaluation. A corollary to this formulation is that, if Butler cannot show genuine issues of material fact as to whether his performance evaluation evinces race-based disparate treatment, then Count V must fail.

Defendant now moves for summary judgment, reasoning that Butler cannot make out a *prima facie* case because he has failed to identify an appropriate comparator. (Doc. 75, at 19-20.)[13] To establish a *prima facie* case of race discrimination in the context of an unfavorable evaluation / denial of a raise, Butler must show that: (i) he belongs to a protected class; (ii) he was qualified to do the job; (iii) he was subjected to an adverse employment action; and (iv) the employer treated similarly situated employees outside his class more favorably. *See, e.g., Crawford*, 529 F.3d at 970; *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008).[14] Daphne Utilities seizes on the "similarly situated comparator" prong of the test, reasoning that Butler has not shown that his adverse treatment by defendant is "in contrast with similarly situated employees outside the protected class." (Doc. 75, at 19.) Such an argument is properly cognizable on summary judgment. *See Felder v. Bradford Health Services*, 493 Fed.Appx. 17, 20-21 (11th Cir. Oct. 18, 2012) (concluding that plaintiff failed to establish *prima facie* case of racially discriminatory denial of pay raise because she "failed to identify a comparator whose experience was substantially similar to her own" or "to present any other evidence of discrimination").

---

[13] This argument is the sole ground for dismissal of Count V identified in Daphne Utilities' principal brief; therefore, the Motion for Summary Judgment as to Carlos Butler's claims stands or falls on whether he has made a sufficient showing of comparators or has otherwise met his *prima facie* burden.

[14] In his brief, plaintiff correctly observes that there are other possible means of establishing a *prima facie* case of disparate treatment. (Doc. 102, at 24.) However, he identifies no alternative formulation that he contends is more appropriate or better suited to the facts and circumstances presented here. Nor does plaintiff argue that the iteration of the *prima facie* test advanced by Daphne Utilities is inappropriate or undesirable.

The only white comparator identified by Butler is James "Eddie" Ferguson, a Wastewater Treatment Plant Operator in the Water Reclamation Department. (Butler Dep., at 42-43; doc. 102, at 10-11 & 28.) The record reflects that Ferguson received a 2012 performance evaluation score of 3.2 (as compared to Butler's 2.6) and a merit raise (which Butler did not). (Anderson Aff. (doc. 76, Exh. 9), ¶ 3 & Exh. B.) Butler objects that Ferguson received a score of "2" ("below expectations") for his deficient attendance while Butler received only a score of "3" ("meets expectations") despite having no attendance issues. (Doc. 102, at 10-11; Butler Decl., at 5.) The problem with Butler's reliance on Ferguson as a comparator is that the two of them are not similarly situated in relevant respects. Butler worked in the Wastewater Collection Department, while Ferguson worked in the Water Reclamation Department. Ferguson's performance evaluation for 2012 was prepared by supervisor Arthur Anderson, as was the case for all Water Reclamation employees. (*Id.*, ¶¶ 2-3; Caudle Statement (doc. 117, Exh. 1), at 7.) By contrast, Butler's final performance evaluation for 2012 was prepared by Caudle, as was the case for all Wastewater Collection employees. Of course, different decisionmakers may reasonably be expected to rate the same levels of performance differently; therefore, the observed proximity between the attendance rating given to Ferguson and that given to Butler does not evince a race-based disparity because the two individuals were not similarly situated.

Butler's rejoinder to the foregoing is to argue that the fact that Ferguson's and Butler's evaluations were prepared by different supervisors is itself proof of disparate treatment. (Doc. 102, at 28.) In that regard, plaintiff's evidence is that employees in the Water Reclamation Department were predominantly white, whereas employees in the Wastewater Collection Department were predominantly black. (Butler Decl., at 1.) As of December 2012, Caudle was the manager in charge of both departments. So, plaintiff observes, the mostly white Water Reclamation Department was evaluated by a low-level supervisor (Anderson), while the (at that time) all-black Wastewater Collection Department was evaluated by the department manager (Caudle) rather than the equivalent low-level supervisor (Maye). Unspoken is plaintiff's apparent conclusion that it is racially discriminatory to have a strict manager (Caudle) prepare performance evaluations for a department staffed by African-American workers, while a more lenient frontline supervisor (Anderson) prepares evaluations for a department staffed by Caucasian workers.

This argument and these facts fail to support a reasonable inference of race discrimination by Daphne Utilities for a number of reasons. First, the record is devoid of evidence to support the premise that Anderson was more generous than Caudle in the performance evaluation process. While plaintiff protests that all employees in the Water Reclamation Department received raises (Butler Decl., at 5), the undisputed evidence is that all employees in the Wastewater Collection Department save Butler himself ultimately received raises as well (doc. 102, at 11). Thus, the record does not support an inference that it was inherently adverse or harmful to employee raise prospects for Caudle (as opposed to a frontline supervisor) to prepare their evaluations.

Second, Daphne Utilities had a legitimate business reason for having Anderson prepare evaluations on the Water Reclamation side, and having Caudle prepare evaluations on the Wastewater Collection side. Indeed, Caudle had been manager over the Water Reclamation Department for approximately five years as of December 2012, with Anderson being his direct report throughout that time period. (Caudle Statement, at 4-5.) For the first two years of that arrangement, Caudle (and not Anderson) prepared final evaluations for the Water Reclamation employees. (*Id.* at 7.) Eventually, however, Anderson became "very proficient with the evaluation process" in the manner sought by Caudle, such that Anderson was permitted to prepare evaluations for those employees himself. (*Id.*) By contrast, December 2012 marked the first round of performance evaluations for which Caudle had been manager of the Wastewater Collection Department; therefore, Caudle's intent was to work with Maye just as he had done with Anderson at first, with Caudle writing and approving final evaluations of all employees. (*Id.* at 7, 15.) In short, the reason why Caudle handled evaluations differently in the Water Reclamation section versus the Wastewater Collection section was that he had managed the former section for years and had a frontline supervisor fully trained as to Caudle's preferred methodology for evaluations, whereas Caudle was relatively new to managing the latter section and had not previously worked with Maye on evaluations. Plaintiff has identified no facts or circumstances that might cast doubt on the veracity of this explanation or suggest that it was somehow a smokescreen for unlawful race discrimination.

At the end of the day, the story here is simple, benign and unchallenged by contrary record facts. Caudle had no experience working with the low-level supervisor in Butler's department, so he wished to prepare the evaluations himself. In Ferguson's department,

however, Caudle had been working with the same low-level supervisor for years and had developed trust in that individual's evaluation abilities, so Caudle did not prepare the evaluations there. Nothing about this collection of facts and reasoning gives rise to even a whiff of race discrimination. To be sure, Butler emphatically objects to Caudle's qualifications to evaluate his performance. As he put it in his summary judgment declaration, "My only issue was that I should not have been evaluated by someone who had not supervised or otherwise observed my daily performance." (Butler Decl., at 6.)[15] Assuming Butler's factual premise to be correct (*i.e.*, that Caudle had never observed his performance and was unqualified to evaluate him), it may well have been unwise or imprudent for Daphne Utilities to allow Caudle to evaluate Wastewater Collection employees such as Butler in December 2012. But the test for a § 1981 or Equal Protection violation is not whether an employee's human resources practices are well-conceived, fair or optimal.

On that point, it has been oft-observed that an employee cannot succeed on a discrimination case by "simply quarreling with the wisdom of" the employer's decisions. *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000). After all, "[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions." *Id.* (citation and internal quotation marks omitted). They do not concern themselves with "how medieval a firm's practices" or "how mistaken the firm's managers" might be. *Id.*; *see also Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) ("it is not our role to second-guess the wisdom of an employer's business decisions – indeed the wisdom of them is irrelevant"); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) ("We are not in the business of adjudging whether employment decisions are prudent or fair."). At most, plaintiff's evidence and argument supports an inference that it was a bad idea

---

[15] This statement echoes Butler's objection in his grievance that "Caudle has never during the rating period in question, supervised or witnessed any job tasks performed by me. He hade [*sic*] no knowledge of my work performance, which made him unqualified to give me a performance rating." (Doc. 76, Exh. 3, at 3.) It finds further reinforcement in Butler's summary judgment brief, which is rife with statements that "Mr. Caudle could not possibly be in a better position than Mr. Maye to assess his strengths and weaknesses," that his evaluation was unfair because of the "subjectivity of the process," and that "Butler contends that he should not have been evaluated by someone who had not supervised or otherwise observed his daily performance." (Doc. 102, at 10, 26.)

(from an accuracy standpoint) for Caudle to evaluate Butler's performance, not that it was racially biased for him to do so. There is simply no plausible basis for inferring discriminatory intent from the fact that Caudle performed performance evaluations for a department that he had supervised for less than two months, even if (as plaintiff alleges) he lacked sufficient facts, data and observation to prepare such evaluations with meaningful precision.

In addition to Butler's inability to identify a similarly situated comparator or to present facts raising a reasonable inference that it was racially discriminatory (as opposed to just unenlightened human resources practice) for Caudle to prepare his performance evaluation, Count V fails as a matter of law for an additional reason. Undisputed facts reveal that Caudle evaluated the performance of four African-American employees in the Wastewater Collection Department in December 2012, to-wit: Carlos Butler, Sybil Williams, Jay Bivins and James McPherson. Caudle issued favorable evaluations to Bivins and McPherson, both of whom received merit raises in December 2012. Caudle did not evaluate Butler's and Williams' performance favorably, so both were denied raises; however, Caudle left open the possibility of retroactive raises for them following mid-year evaluations in 2013 if they showed improvement. In Caudle's view, Williams displayed the requisite improvement, as a result of which Caudle awarded her a raise in mid-2013, retroactive to 2012. He did the same for the department's supervisor, Woodrow Maye, upon reviewing his performance for the first time in July 2013. The point is that every African-American employee in the Wastewater Collection Department other than Butler received a merit raise either at the end of 2012 or in mid-2013, retroactive to the end of 2012. No colorable inference of invidious race discrimination can exist where Caudle's evaluations and raise recommendations resulted in 4 out of 5 black employees in the department receiving merit raises effective December 2012, with the lone exception being our plaintiff, Butler.[16]

---

[16] This conclusion is not undermined by Butler's attempt on summary judgment to rely on evidence of procedural regularities in the ensuing internal grievance process. In particular, Butler cites a 2014 report by attorney Edward B. McDermott, suggesting that it might have violated Daphne Utilities policy for the company to remove HR Manager Deloris Brown from the investigation and replace her with General Manager Rob McElroy. (Doc. 102, at 29.) But this is a red herring. Butler has not presented a claim for discriminatory grievance handling, or for breach of contract in connection with Daphne Utilities' disposition of his grievance. Nothing about McElroy's empanelment as decision maker for Butler's grievance appears to have (Continued)

In sum, nothing about the record in this case suggests that race had anything to do with Butler's performance evaluation or denial of a raise. Butler has not identified a similarly situated comparator outside the protected class who was rated more favorably than he. Butler's protests that "Mr. Caudle could not possibly be in a better position than Mr. Maye to assess his strengths and weaknesses" and his objections to the "subjectivity of the process" (doc. 102, at 10) do not enable him to withstand summary judgment review. After all, federal civil rights law does not entitle an employee to an accurate performance evaluation by a knowledgeable supervisor of the employee's choosing.

More generally, plaintiff's case fails because Butler has identified no record facts about Caudle's involvement that might raise a reasonable inference of disparate treatment on the basis of race. To be sure, Caudle may not have been the most knowledgeable or qualified person to evaluate the performance of Wastewater Collection employees in December 2012, but there is no reason to believe that he took on this responsibility in furtherance of a racist agenda. Differences in the evaluation process for December 2012 in the predominantly black Wastewater Collection section versus the predominantly white Water Reclamation section are readily explained away by innocuous facts pertaining to the length of time that Caudle had managed each and his level of familiarity / trust in the line supervisor to complete evaluations in harmony with Caudle's preferences. And, of course, the net result of Caudle's evaluations was that four of the five black Wastewater Collection employees received merit raises, either on the spot in December 2012 or retroactively in mid-2013. Against that undisputed factual backdrop, Butler's insistence that Caudle and/or Daphne Utilities rigged the process to deprive African-American Wastewater Collection employees of merit raises lacks plausibility, much less evidentiary support.

---

any bearing on the legitimacy *vel non* of Caudle's decision to evaluate Wastewater Collection employees himself. The latter decision, not the former, is being challenged by Butler in the Amended Complaint. Besides, insofar as Butler urges the Court to adopt the McDermott report, he should be cognizant that the last sentence of that report reads as follows: "There are no factual bases for Butler's allegations that Caudle's ratings and denial of a pay raise were racially discriminatory and created a hostile working environment." (McElroy Aff., ¶ 7 & Exh. F at 11.) Butler cannot simply cherry-pick the portions of the McDermott report he likes and discard the remainder.

Accordingly, Daphne Utilities is entitled to entry of summary judgment in its favor on Count V based on Butler's failure to establish a *prima facie* case of racially discriminatory performance evaluation / denial of merit raise, or to come forward with any evidence raising a reasonable inference of disparate treatment based on race.[17]

## IV. Conclusion.

For all of the foregoing reasons, it is **ordered** that Defendant's Motion for Summary Judgment (doc. 74) is **granted**. Plaintiff Carlos Butler's claim of discriminatory performance evaluation / denial of raise (Count V) is **dismissed** because there are no genuine issues of material fact and defendant is entitled to judgment is a matter of law. Count V was the only claim asserted by Butler in the Amended Complaint; therefore, the Clerk of Court is directed to **terminate** Carlos Butler as a party plaintiff to these proceedings. A final judgment will be entered as to plaintiff Butler upon resolution of the remaining claims brought by plaintiffs Cedric Goodloe and Voneka Nettles.

DONE and ORDERED this 24th day of March, 2015.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[17] Also in its principal brief, Daphne Utilities contends that it is entitled to judgment as a matter of law on "any claim for" punitive damages that Butler is asserting. (Doc. 75, at 20-21.) The Amended Complaint is devoid of any reference to punitive damages; rather, the *ad damnum* clause requests that Butler be awarded a declaratory judgment; $300,000 in compensatory damages; all annual increases and benefits he has been wrongfully denied; and costs and fees. (Doc. 6, at 10-11.) As the Amended Complaint lacks any indication that punitive damages are being sought, Daphne Utilities' Motion for Summary Judgment is unnecessary insofar as it seeks dismissal of a nonexistent element of damages.