**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **CEDRIC GOODLOE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION 13-0605-WS-C** |
| ) | |
| **DAPHNE UTILITIES,** ) | |
| ) | |
| **Defendant.** ) | |

**ORDER**

This matter comes before the Court on the following pretrial motions: Defendant's First Motion in Limine Regarding Other Claims (doc. 133), Defendant's Second Motion in Limine Regarding Injuries and Medical Treatment (doc. 134), Defendant's Third Motion in Limine Regarding Punishment (doc. 135), Defendant's Fourth Motion in Limine Regarding Insurance (doc. 136), Defendant's Fifth Motion in Limine Regarding Settlement (doc. 137), Defendant's Sixth Motion in Limine Regarding Unsigned Letters (doc. 138), and Defendant's Motion to Amend Pretrial Document (doc. 129) as Supplemented (doc. 139). All of these Motions have been briefed and are now ripe for disposition.

**I.      Motion in Limine Regarding Other Claims.**

In its first Motion in Limine, defendant, Daphne Utilities, seeks an order excluding any testimony or argument at plaintiff Cedric Goodloe's trial that might make "the jury aware that any other EEOC charges, complaints, lawsuits or allegations related to discrimination or retaliation have been lodged against Daphne Utilities." (Doc. 133, at 3.) As grounds for this Motion, Daphne Utilities observes that Goodloe's sole remaining claim for trial sounds in a theory of retaliation. In light of the dismissal of Goodloe's race discrimination claim on summary judgment, Daphne Utilities reasons, any evidence or accusations of racially disparate treatment against any employee would be "irrelevant to his remaining claim of retaliation." (*Id.* at 2.) Movant also objects to such evidence under Rules 403 and 801 of the Federal Rules of Evidence, asserting that it "would only confuse the jury" and "is hearsay." (*Id.*)

As plaintiff correctly points out in his Response (doc. 140), the relevance objection is unavailing.  It is true enough, of course, that Goodloe's only claim for trial is a retaliation cause of action under 42 U.S.C. § 1981, and that neither Goodloe's race discrimination claims (which were dismissed on summary judgment) nor those of any other Daphne Utilities employee will be tried here.  However, Daphne Utilities has emphatically staked itself to a litigation position that Goodloe's retaliation claim fails for want of statutorily protected activity.  On summary judgment, Daphne Utilities posited that Goodloe's retaliation claim should be rejected as a matter of law because "he cannot show an objectively reasonable perception he was opposing an unlawful employment practice."  (Doc. 81, at 28.)  This theme carries over into the Joint Pre-Trial Document, wherein Daphne Utilities recites as "Defenses" each of the following questions: (i) "Did Plaintiff Goodloe have a good faith reasonable belief that the actions he was opposing would be unlawful under the statute at issue?"; (ii) "Did Goodloe have a subjective belief he was being discriminated against?"; and (iii) "Was Goodloe's belief objectively reasonable in light of the facts and record presented?"  (Doc. 127, at 2.)[1]

Having asserted this defense of no subjective or objectively reasonable belief of race discrimination, Daphne Utilities cannot utilize Rules 401 or 403 to handcuff Goodloe from rebutting that defense.  Given defendant's contention that his complaints were not made in good faith (such that they were not statutorily protected activity), plaintiff bears the burden of demonstrating to the jury that he harbored a subjective and objectively reasonable belief that Daphne Utilities was engaging in racially discriminatory conduct (whether towards Goodloe or anyone else) at the time of his internal complaints.  To meet that burden, plaintiff must present evidence identifying, among other things, (a) what information Goodloe possessed at the time he complained internally of alleged race discrimination by Daphne Utilities; (b) what basis Goodloe had for deeming that information to be reliable; and (c) how that information supported and informed the specific complaints that Goodloe voiced to Daphne Utilities officials.  This is exactly the kind of evidence that defendant now seeks to exclude.  Simply put, Daphne Utilities

---

[1]     The law requires a plaintiff asserting a § 1981 retaliation claim, as Goodloe is, to show "that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices."  *Dixon v. The Hallmark Companies, Inc.*, 627 F.3d 849, 857 (11th Cir. 2010).  Thus, these "defenses" interposed by Daphne Utilities appear legally proper in the context of the specific retaliation claim presented by Goodloe for trial.

cannot challenge whether Goodloe possessed a subjective and objectively reasonable belief that Daphne Utilities was engaging in racially discriminatory conduct towards its employees, on the one hand, then block Goodloe from presenting evidence of such a subjective and objectively reasonable belief, on the other.  Evidence of racially discriminatory practices by Daphne Utilities is obviously relevant, and indeed vital, to Goodloe's mandatory "good faith" showing; therefore, defendant's objections to this line of evidence under Rules 401 and 403 are overruled.

Similarly, Daphne Utilities' Rule 801 objection to this "good faith" evidence appears misplaced.  If the Court understands plaintiff's intentions properly, such evidence would appear not to be offered for the truth of the matter asserted (*i.e.*, that Daphne Utilities systematically discriminated against black employees) but rather to show Goodloe's state of mind (*i.e.*, his good faith belief that Daphne Utilities had done so).  Introduced for this limited purpose, the challenged evidence would not be inadmissible under the hearsay rule.

For all of the foregoing reasons, Defendant's First Motion in Limine Regarding Other Claims (doc. 133) is **denied**.[2]

---

[2]     Notwithstanding this ruling, there is a caveat.  This is not a race discrimination case.  Plaintiff is not being granted a license to pack into his case in chief every allegation of race discrimination by Daphne Utilities that has ever been voiced by anyone at any time.  Rather, the evidence of race discrimination will only be admissible for the purpose of establishing Goodloe's good faith (or lack thereof) in his complaints to company officials.  Thus, for example, facts or allegations of which Goodloe was unaware at the time of his complaints, that postdated his complaints, or that are otherwise unrelated to his complaints, are neither relevant nor admissible.  Moreover, in allowing such evidence, the Court expects the parties to remain mindful of Rule 403's restriction on cumulative presentations.  The issue of "good faith" (which is significant here only as it relates to Goodloe's retaliation claim) will not be allowed to hijack the trial by effectively transforming it into one about race discrimination.  To that end, the Court will entertain any trial objection that the volume and magnitude of plaintiff's "good faith" evidence is excessive and repetitive, and hence inadmissible under Rule 403.  Also, to the extent that Goodloe has announced his intent to rely on the "me too" principles articulated in *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1285-87 (11th Cir. 2008), such reliance is unwarranted for the reasons identified in defendant's Reply (doc. 149).  The Court is not aware of any evidence that the same Daphne Utilities decision maker(s) who fired Goodloe also fired other employees in retaliation for engaging in statutorily protected activity.  In the absence of such evidence, this case does not appear to fit the "me too" paradigm.  Certainly, plaintiff has proffered no authority holding that evidence of one decision maker's racially discriminatory treatment of others can be "me too" evidence probative of another decision maker's retaliatory (not discriminatory) intent in firing the plaintiff for engaging in protected activity.  This kind of apples-to-oranges comparison is unhelpful and improper, even in the context of a "me too" theory.

II.      **Motion in Limine Regarding Injuries and Medical Treatment.**

Daphne Utilities' second Motion in Limine seeks an order excluding plaintiff Goodloe from offering evidence or argument at trial "concerning the alleged injuries or treatment of Plaintiff Cedric Goodloe in this case." (Doc. 134, at 1.)  Defendant maintains that, while Goodloe testified in his deposition that he suffers from cardiovascular disease and takes Lisinopril for hypertension, Goodloe never disclosed medical testimony to provide a diagnosis or to establish medical causation for these alleged injuries.  In the absence of this necessary factual predicate, Daphne Utilities maintains, any such evidence of Goodloe's medical issues is inadmissible.

Defendant misapprehends the nature of Goodloe's anticipated testimony.  The deposition excerpt appended to the Motion in Limine reflects the following: (i) Goodloe was diagnosed with a medical condition pursuant to which he was prescribed Lisinopril; (ii) after Daphne Utilities fired him, Goodloe became uninsured and could no longer afford this prescription medication; (iii) without his medication, Goodloe experienced "physical discomfort" in the form of "very strong heart palpitations which created an inability to sleep." (Doc. 134, Exh. A at 94-95.)  As plaintiff states in his Response (doc. 142), his testimony on this issue will simply be to describe "how he feels when on his medication as oppose[d] to how he feels when he is off of his medication." (Doc. 142, at 1.)  Such testimony falls squarely within the boundaries of admissibility under Rule 701, Fed.R.Evid., and does not require a foundation of expert testimony.  Thus, the Second Motion in Limine Regarding Injuries and Medical Treatment (doc. 134) is **denied**.[3]

---

[3]      The reasoning and result would be different if Goodloe were arguing that the absence of medication caused him to have a newly diagnosed medical problem for which he seeks compensation in this lawsuit.  The Court's understanding, however, is that Goodloe simply wants to testify that he was taking medication for a previously diagnosed medical condition, that he could not afford that medication after he was fired and lost his health insurance, and that he experienced specified physical discomfort (for which he seeks compensatory damages) when he stopped taking his medication.  All of that testimony is rationally based on Goodloe's own perception, is helpful to determining a fact in issue, and does not require scientific, technical or other specialized knowledge; therefore, it is admissible as a lay opinion under Rule 701.  If Daphne Utilities wishes to attack Goodloe's lay opinion as lacking medical corroboration, then its recourse is cross-examination, not exclusion of the lay opinion itself.

III.     **Motion in Limine Regarding Punishment.**

      The third Motion in Limine filed by Daphne Utilities seeks to bar plaintiff Goodloe and his lawyer from arguing that the jury needs to "send a message" to Daphne Utilities, take decisive action to jar Daphne Utilities into correcting its personnel practices, or otherwise "punish the Defendant." (Doc. 135, at 1.)  Movant theorizes that any such arguments by Goodloe would serve only to inflame the passions of the jury, and are improper in the context of plaintiff's claims, which do not encompass punitive damages.

      In his Response (doc. 141), plaintiff disclaims any intention of arguing to the jury that it should award damages against Daphne Utilities as punishment.  Given this statement, it is unclear exactly what Daphne Utilities' concern is, or upon what legal footing any such concern rests.  It is also unclear exactly what plaintiff's counsel intends to argue about damages at trial.  Surely, plaintiff's proposed arguments encouraging the jury to "hold[ ] Defendant accountable for the wayward behavior of its managers by a favorable verdict for the Plaintiff" (doc. 141, at 1) would not be improper.  Rather than engaging in the unproductive hypothetical exercise of attempting to anticipate exactly how plaintiff's closing argument will be framed, the Court will address any objections to plaintiff's counsel's arguments concerning damages in context at the time they are made.[4]  Because Daphne Utilities has not identified any specific objectionable damages-related arguments that Goodloe intends to assert at trial, Defendant's Third Motion in Limine Regarding Punishment (doc. 135) is **denied**.[5]

---

    [4]      To guide the parties' trial preparations, the Court strongly encourages them to review the damages instruction found at Eleventh Circuit Civil Pattern Jury Instructions § 4.9 (2013 ed.), as referenced in § 4.21.  Because that legal statement of the permissible components of a damage award will govern here, the parties should refrain from making any damages-related arguments that diverge from the legal principles set forth therein.  The parties are also reminded that, as a general rule, "an attorney is to be given a good deal of leeway in his argument to the jury, and a trial judge has wide discretion in regulating the scope of the argument."  *Commercial Credit Equipment Corp. v. L & A Contracting Co.*, 549 F.2d 979, 981 (5th Cir. 1977).  While arguments that misstate the law, misrepresent the facts, or encourage jurors to render a verdict based on emotion are improper, a vast range of permissible arguments is available to a plaintiff during closing arguments.  This Court will not erect artificial boundaries to curtail that broad spectrum.

    [5]      In a Reply (doc. 148) filed on May 5, 2015, Daphne Utilities submits additional argument and authority for the proposition that plaintiff's counsel should be precluded from asking the jury to "send a message or punish the Defendant through a favorable verdict."  (Doc. 148, ¶ 5.)  Perhaps, but plaintiff has never intimated that he intends to make such requests or use
(Continued)

**IV.     Motion in Limine Regarding Insurance.**

Daphne Utilities' fourth Motion in Limine seeks to preclude plaintiff Goodloe from presenting any evidence or argument to the jury that Daphne Utilities had insurance during the relevant time period, that an insurance claim was made concerning Goodloe's allegations, or that an insurance company may foot the bill for any award that the jury may make.  As support for this Motion, Daphne Utilities argues that such evidence would impermissibly prejudice and confuse the jury.  In Response (doc. 143), plaintiff indicates that he does not oppose this Motion in Limine; thus, it appears that plaintiff does not intend to offer any such insurance-related evidence or argument at trial.  Because the Fourth Motion in Limine Regarding Insurance (doc. 136) is unopposed, it is **granted**.  Plaintiff is not to present any evidence or argument to the jury relating to Daphne Utilities' insurance status, the presence or absence of insurance coverage for Goodloe's claims, or whether defendant filed a claim with any insurance company as a result of Goodloe's lawsuit.

**V.     Motion in Limine Regarding Settlement.**

The fifth defense Motion in Limine simply asks the Court to enforce the Federal Rules of Evidence as they relate to "any settlement negotiations or settlement discussions in this case." (Doc. 137, at 1.)  Defendant does not identify any prohibited evidence or argument that Goodloe might seek to introduce, and indeed does not come forward with any suggestion that Goodloe will seek to place evidence of settlement negotiations or discussions before the jury.  Be that as it may, Goodloe has indicated that he does not oppose this Motion.  (*See* doc. 143.)  Accordingly, the Fifth Motion in Limine Regarding Settlement (doc. 137) is **granted**.  Plaintiff is not to present any testimony or argument relating to settlement negotiations in this case.

**VI.     Motion in Limine Regarding Unsigned Letters.**

As its sixth Motion in Limine, Daphne Utilities seeks a ruling that excludes Goodloe from introducing into evidence or otherwise referencing Plaintiff's Exhibit 11, which consists of two unsigned letters.  The first such letter purportedly "complains about the alleged pay disparity

such language to the jury.  This kind of speculative exercise of quarreling about phrases and arguments that plaintiff's counsel has never professed any intention to present is not constructive.  In lieu of such an endeavor, the Court will take up any objections to plaintiff's closing argument in context, subject to the guidelines and provisions identified in footnote 4, *supra*.

between Caucasian and African American employees" at Daphne Utilities, while the second purportedly accuses "upper level managers [of] misappropriating funds." (Doc. 138, at 2.) The crux of the Motion in Limine is that these letters are irrelevant to Goodloe's claims, would be unfairly prejudicial, and constitute inadmissible hearsay.

Plaintiff's Response (doc. 147) reflects that he does not oppose this Motion in Limine. On that basis, the Sixth Motion in Limine Regarding Unsigned Letters (doc. 138) is **granted**. Plaintiff may not rely on, reference, elicit testimony concerning, or offer into evidence the two letters found at Plaintiff's Exhibit 11.

## VII.   Motion to Amend Pretrial Document.

Finally, Daphne Utilities has moved to amend the Joint Pretrial Document as to Cedric Goodloe (doc. 127) that the parties submitted on April 8, 2015. In particular, Daphne Utilities contemplates amending the Pretrial Document to add six new documents to its exhibit list as Exhibits 44 through 49. These documents are described as "reconciliation documents," meaning that they are portions of ledger reports that related to Goodloe's work for Daphne Utilities. According to defendant, Goodloe's job duties included payroll and benefits reconciliation, and these new Exhibits 44 through 49 demonstrate inadequacies in Goodloe's performance of that particular duty.

For his part, Goodloe objects that the proposed supplementation is improper on timeliness grounds. (*See* docs. 130, 144.) In particular, plaintiff asserts that Exhibits 44 through 49 were neither provided nor mentioned "during Defendant's initial disclosures, during discovery, or during its compliance with rules relating to pre-trial disclosures," and states that he would incur prejudice if Daphne Utilities were allowed to inject these exhibits into this case on the eve of trial. (Doc. 130, at 1.) According to Goodloe, Daphne Utilities is attempting to achieve an impermissible "trial by ambush" through these exhibits.

Several observations are germane here. First, to the extent that Goodloe's objection rests on Daphne Utilities' failure to reference these exhibits in its initial disclosures, it is unpersuasive. Of course, applicable rules require a litigant to make initial disclosures including "a copy – or a description by category and location – of all documents … that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." Rule 26(a)(1)(A)(ii), Fed.R.Civ.P. Daphne Utilities did not describe these reconciliation documents to Goodloe in its initial disclosures, and indeed did not disclose them at all until April 10, 2015. To

explain this delay, defendant submits an affidavit from its General Manager specifying that he "was not unaware of these ledger reports … until immediately prior to the time that Daphne Utilities moved to supplement the pretrial document with these exhibits on April 10, 2015." (Lyndall Aff. (doc. 139, Exh. A), ¶ 2.)  Goodloe fires back that this explanation is unsatisfactory and that Daphne Utilities was obliged to investigate its case fully and comprehensively prior to the time of its original disclosures.  This contention overstates the initial disclosure requirement by a substantial margin.  In fact, Rule 26 requires only that a party must make initial disclosures "based on the information then reasonably available to it."  Rule 26(a)(1)(E).  And the official commentary clarifies that "[t]he rule does not demand an exhaustive investigation at this stage of the case, but one that is reasonable under the circumstances."  Rule 26, Fed.R.Civ.P., Advisory Committee Notes (1993).  The Court has no information and no reason to believe that Daphne Utilities did not perform an investigation that was "reasonable under the circumstances" when it submitted its initial disclosures; therefore, it is far from clear that a violation of Rule 26(a)(1) occurred here.

Second, while Daphne Utilities was under an obligation to supplement its initial disclosures "in a timely manner," no such supplementation is required "if the additional or corrective information has … otherwise been made known to the other parties during the discovery process."  Rule 26(e)(1)(A), Fed.R.Civ.P.  Plaintiff contends that Daphne Utilities never mentioned performance issues as a factor in the decision to terminate Goodloe's employment until after the summary judgment process had concluded.  (Doc. 144, at 1-3.)  This assertion is demonstrably inaccurate.  In interrogatory responses, Daphne Utilities stated as the reasons for Goodloe's discharge that, among other things, he "was only marginally effective in his payroll and benefits duties" and displayed "mediocre performance."  (Interrogatory Response #5.)  In a summary judgment affidavit, Daphne Utilities' General Manager said exactly the same thing.  (Lyndall Aff. (doc. 82, Exh. 3), ¶ 4.)  Plaintiff cannot reasonably be heard to complain now that he was not on notice that Daphne Utilities was claiming a performance-based reason for his termination.  Having such notice relatively early in the discovery process, plaintiff could have followed up with appropriate inquiries about the specifics of the alleged performance shortcomings and requested copies of documentation that might substantiate same.  Plaintiff's failure to do so vitiates much of the equitable force of his present cries of "trial by ambush."  The point is that there is a credible argument that Daphne Utilities did not violate Rule 26(e)'s

supplementation requirement because Goodloe was reasonably made aware of the existence of a performance justification for the challenged personnel action during the discovery process, and several months before trial, yet he did not follow up in any discernable manner.

Third, assuming (without deciding) that Daphne Utilities violated the Rule 26 disclosure requirements by not disclosing Exhibits 44 through 49 at an earlier date, exclusion is not an appropriate remedy in this case.  After all, the Federal Rules of Civil Procedure provide that where a party fails to provide timely disclosure or supplementation as required under Rule 26, "the party is not allowed to use that information … at a trial, unless the failure was substantially justified or is harmless."  Rule 37(c)(1), Fed.R.Civ.P.  Here, the facts before the Court unequivocally establish that the delayed disclosure of Exhibits 44 through 49 was harmless.

As indicated previously, plaintiff was on notice from defendant's interrogatory responses and summary judgment submissions that there was a performance component to Daphne Utilities' stated justifications for terminating Goodloe's employment.  Notwithstanding such notice, Goodloe did not press Daphne Utilities for details about the alleged performance shortcomings via deposition questioning, supplemental interrogatories, requests for production of documents, or even requests to reopen discovery during the summary judgment proceedings.  Given plaintiff's track record in this litigation, there is no reason to believe that Goodloe would have done anything with these exhibits had their existence been disclosed to him at the outset of the case.  Besides, Goodloe has never specified what steps he would have taken had this information been disclosed to him earlier or how it might have affected his discovery plan or trial preparations, particularly given his failure to take any discovery about performance issues even after they were brought to his attention as a ground for discharge.[6]  The conclusory allegation of "prejudice" does not appear to be substantiated by facts.  Finally, as plaintiff himself recognizes, the utility of Exhibits 44 through 49 for defendant's case at trial is modest, at best.  These do not appear to be significant, game-changing documents; to the contrary, Danny Lyndall, the Daphne

---

[6]       On that point, it bears emphasis that Daphne Utilities disclosed and furnished Exhibits 44 through 49 to Goodloe's counsel on April 10, 2015, some 46 days before the jury trial setting in this case.  Had Goodloe requested limited reopener of discovery (formally or informally) to enable him to investigate what defendant's witnesses might have to say about these reconciliation statements, there would have been ample time to accommodate such a request and alleviate any attendant prejudice, all without jeopardizing the trial date.  No such request was made.

Utilities decision maker who fired Goodloe, has signed a sworn Affidavit confirming that he "was not aware of these ledger reports" until April 10, 2015, more than two years after the subject termination decision.  Also, certain of those exhibits appear to predate Daphne Utilities' decision to hire Goodloe as a full-time employee, suggesting that defendant did not view this as a serious performance problem.  Plaintiff is thus well-positioned to cross-examine Lyndall about those exhibits (which Lyndall admittedly had never seen and was not even aware of when he fired Goodloe) and their role, if any, in the termination decision.[7]  The evidentiary value of these records appears limited, thus attenuating any prejudice that might otherwise accrue to Goodloe.

Given plaintiff's failure to utilize available discovery tools to explore defendant's allegation that Goodloe had been fired for, among other things, "mediocre performance," and the fact that the reconciliation documents do not appear to have significant evidentiary value in establishing grounds for his discharge, the Court readily concludes that any violation by Daphne Utilities of its Rule 26 disclosure obligations as to those documents is harmless.  As such, Exhibits 44 through 49 will not be excluded.  Defendant's Motion to Amend Pretrial Document (doc. 129) is **granted** pursuant to Rule 16(e), Fed.R.Civ.P.  The Joint Pretrial Document (doc. 127) filed by the parties on April 8, 2015 is **amended** to include Exhibits 44 through 49 in defendant's exhibit list, with the content of such exhibits to be as specified in the body of the Motion to Amend.

**VIII.   Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1.      Defendant's First Motion in Limine Regarding Other Claims (doc. 133), Defendant's Second Motion in Limine Regarding Injuries and Medical Treatment (doc. 134), and Defendant's Third Motion in Limine Regarding Punishment (doc. 135) are **denied**;

---

[7]      That is not to say, however, that Exhibits 44 through 49 are irrelevant. Defendant's evidence is that Daphne Utilities Finance Manager Teresa Logiotatos had previously "mentioned" to Lyndall "that there were deficiencies in Cedric Goodloe's work regarding the payroll and benefits reconciliation." (Lyndall Aff. (doc. 139, Exh. A), ¶ 2.)  These exhibits apparently corroborate Logiotatos's statement to Lyndall, even if Lyndall never saw them or knew they existed.  If Lyndall relied on the Logiotatos remark to justify firing Goodloe, then the reconciliation documents would be relevant to corroborate that remark.

2.      Defendant's Fourth Motion in Limine Regarding Insurance (doc. 136), Defendant's Fifth Motion in Limine Regarding Settlement (doc. 137), and Defendant's Sixth Motion in Limine Regarding Unsigned Letters (doc. 138) are **granted**; and

3.      Defendant's Motion to Amend Pretrial Document (doc. 129) is **granted**, such that the Joint Pretrial Document (doc. 127) is **amended** to include Defendant's Exhibits 44 through 49.


DONE and ORDERED this 7th day of May, 2015.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE