IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CEDRIC GOODLOE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DAPHNE UTILITIES, )<br>)<br>Defendant. ) | CIVIL ACTION 13-0605-WS-C |

**ORDER**

This matter comes before the Court on plaintiff Cedric Goodloe's Motion for New Trial and Sanctions (doc. 168), and defendant's Motion to Re-Tax Costs (doc. 169). The relevant briefing schedule has expired, and both Motions are now ripe.

**I.      Background.**

Plaintiff Cedric Goodloe brought a claim of retaliation in violation of 42 U.S.C. § 1981 against his former employer, Daphne Utilities. The case proceeded to jury trial on May 26 and 27, 2015. Following deliberations, the jury returned Special Interrogatories reflecting their unanimous findings that Goodloe had engaged in protected activity, but that such protected activity was not a motivating factor that prompted Daphne Utilities to terminate his employment. Because the latter determination negated Goodloe's ability to recover on a retaliation theory, the Court entered Final Judgment (doc. 163) in favor of Daphne Utilities and against Goodloe on May 29, 2015.

During the trial, defense counsel cross-examined Goodloe about the circumstances of his separation from another employer, Hargrove Engineering, and his return to full-time employment at Daphne Utilities in early 2011. Goodloe repeatedly testified that he had resigned from Hargrove because Daphne Utilities was offering him higher pay. (Doc. 171, Exh. A, at 21.) The jury also viewed a clip of Goodloe's video deposition in which he denied having ever filed an EEOC Charge of Discrimination other than the one he lodged against Daphne Utilities. (*Id.* at 23.) During that same cross-examination, defense counsel introduced into evidence Defendant's

Exhibit 34, an EEOC Charge against Hargrove signed by Goodloe on February 10, 2011, and alleging that Hargrove had terminated Goodloe's employment because of his race. (Doc. 171, Exh. C.) Goodloe attempted to explain away these discrepancies by testifying that he did not recall whether he had resigned or whether Hargrove had fired him, and that he did not recall having filed the Hargrove EEOC Charge. Given the weakness of these explanations and the glaring inconsistencies between Exhibit 34 and his testimony, Goodloe's credibility was substantially impeached by this cross-examination. At no time before or during trial did plaintiff's counsel object to the introduction of Defendant's Exhibit 34 into evidence or to Daphne Utilities' use of that document in the Goodloe cross-examination.

It is undisputed that Daphne Utilities obtained the Hargrove EEOC Charge in the following manner: Defendant's counsel contacted Hargrove and apparently learned of the existence of the Hargrove EEOC Charge in spring 2014, but did not obtain a copy of the document or otherwise follow up at that time. (Doc. 168, Exh. C, ¶ 4; doc. 171, at 2.) Pursuant to the operative Rule 16(b) Scheduling Order, discovery closed on November 14, 2014. (Doc. 15, ¶ 2.) On April 13, 2015, five months after the close of discovery and less than six weeks before trial, without leave of court Daphne Utilities issued a "Subpoena in a Civil Case" to Hargrove, commanding it to produce "[d]ocuments pertaining to EEOC Charge Number 425-2011-00331" at defense counsel's offices on April 17, 2015. (Doc. 168, Exh. A.) The Subpoena further commanded Hargrove that "[i]f certified copy of documents requested not received, appear at" Courtroom 2A of the U.S. Courthouse in Mobile, Alabama on May 5, 2015, the date of jury selection. (*Id.*) For its part, Hargrove responded to the Subpoena on the same day it was issued by providing Daphne Utilities with a certified copy of Goodloe's EEOC Charge against Hargrove dated February 10, 2011, as well as approximately 50 pages of additional materials. (Doc. 168, Exh. B.)

At no time did Daphne Utilities furnish Goodloe with either notice or a copy of the Subpoena. However, in the Joint Pretrial Document filed on April 8, 2015, Daphne Utilities included a two-page Exhibit List numbering 43 items. Exhibit 34 on Defendant's Exhibit List read "Goodloe's EEOC Charge of Discrimination – Hargrove." (Doc. 127, at 35.) Although Paragraph 4(J)(1) of the undersigned's Standing Order Governing Pretrial Conferences requires that "[o]bjections to exhibits shall be noted in the Joint Pretrial Document, setting forth the nature of the objection" (doc. 15, ¶ 8 & doc. 15-1 at 4), Goodloe did not articulate objections to

Defendant's Exhibit 34 (or any other defense exhibit) in the Joint Pretrial Document.  Nor did Goodloe file any motion in limine seeking to exclude Defendant's Exhibit 34.  Instead, Goodloe remained silent about Exhibit 34 both before and during the trial, never expressing any concerns about the manner of its production or the sufficiency of notice until several weeks after the jury returned a defense verdict.

**II.     Analysis.**

      *A.     The Hargrove EEOC Charge was Properly Disclosed, but Improperly Obtained.*

Some 28 days after entry of Final Judgment, Goodloe filed a Motion for New Trial and Sanctions, in which he accused defense counsel of "blatant and intentional misconduct" with regard to the procurement and utilization of Defendant's Exhibit 34.  (Doc. 168, at 1.)  In particular, Goodloe ascribes at least three distinct forms of misconduct to defense counsel's actions, to-wit: (i) service of a discovery subpoena on Hargrove five months after the close of discovery; (ii) failure to provide mandatory notice to plaintiff's counsel of the Hargrove subpoena; and (iii) failure to disclose the Hargrove EEOC Charge to plaintiff's counsel before trial.

As a threshold matter, Goodloe's allegations of nondisclosure are counterfactual.  In his Motion, plaintiff protests that Daphne Utilities was "hiding its hand and preparing for trial by ambush" (doc. 168, at 5), that "Defendant's failure to list the subpoenaed documents in its pre-trial disclosures … is inexcusable" (*id.* at 8), and that "Defendant's failure to seek leave to amend its disclosures to list the subpoenaed documents … clearly reflects a conscious plan to 'spring' the subpoenaed materials at trial, just as it did" (*id.*).  Such rhetoric is in direct conflict with the facts.  The Joint Pretrial Document filed nearly seven weeks before trial includes Daphne Utilities' enumeration of "Goodloe's EEOC Charge of Discrimination – Hargrove" as Defendant's Exhibit 34.  (Doc. 127, at 35.)  This was not "trial by ambush."  This was not defendant "springing" a secret exhibit on Goodloe at trial.  To the contrary, Daphne Utilities clearly and unequivocally disclosed both the existence of the Hargrove EEOC Charge and its intent to use it as a trial exhibit in the Joint Pretrial Document.  There was no failure to disclose, and Goodloe is entitled to neither a new trial nor sanctions on that basis.[1]

---

[1]     In his Reply, Goodloe balks that in its Pretrial Disclosures dated March 27, 2015, Daphne Utilities did not specifically list the Hargrove EEOC Charge as such, but instead recited (Continued)

That said, Goodloe's argument that the April 13 subpoena violates the Scheduling Order is meritorious.  The discovery period closed five months before Daphne Utilities issued a subpoena for Hargrove to produce the EEOC Charge and related records, yet Daphne Utilities never requested leave of court to engage in such untimely discovery activities.  It is no answer to argue, as Daphne Utilities does, that this was a <u>trial</u> subpoena issued under Rule 45(a)(1)(C), rendering it somehow exempt from the discovery deadline.  Considerable authorities are to the contrary.  "Rule 45 subpoenas have been generally held to constitute discovery, and therefore, are subject to the same time constraints that apply to all other formal discovery."  *Abrams v. Ciba Specialty Chemicals Corp.*, 265 F.R.D. 585, 588 (S.D. Ala. 2010) (citations omitted).[2]

---

as separate exhibits "Goodloe Charge of Discrimination" and "Goodloe's EEOC Charge of Discrimination," which plaintiff's counsel assumed (without inquiry or verification) to be duplicative references to the same document.  (Doc. 173, Exh. C.)  Goodloe theorizes that this was done to lull plaintiff's counsel into thinking that there was only one EEOC Charge among defendant's exhibits (*i.e.*, Goodloe's EEOC Charge against Daphne Utilities), "correctly predicting that opposing counsel, having reviewed the required pre-trial disclosures for objections, would not likely repeat the exercise in preparation of the joint report."  (Doc. 173, at 5.)  This argument strains the bounds of credulity.  This Court perceives no evidence, and has no reason to believe, that Daphne Utilities was trying to deceive Goodloe into overlooking its listing of the Hargrove EEOC Charge as an exhibit in the Joint Pretrial Document.  It goes without saying that counsel are obligated to peruse the Joint Pretrial Document (and particularly the other side's exhibit list) and are responsible for knowing the contents of same.  Apparently, plaintiff's counsel did not review defendant's two-page exhibit list in the Joint Pretrial Document, but instead simply assumed that it would be identical to the exhibit list set forth in defendant's Pretrial Disclosures served sometime earlier.  Such omissions and unwarranted assumptions by plaintiff's counsel do not raise a credible inference of nefarious behavior or sanction-worthy misconduct by defendant's counsel.  Goodloe could have asked defendant whether the two references to EEOC Charges in defendant's Pretrial Disclosures were a mistake, rather than simply assuming it to be so.  Goodloe should have reviewed defendant's exhibit list in the Joint Pretrial Document, rather than simply assuming there were no changes.  Had he done so, Goodloe would have noticed the line item in the Joint Pretrial Document listing "Goodloe's EEOC Charge of Discrimination – Hargrove" as Defendant's Exhibit 34.  Plaintiff will not be awarded any form of sanctions or post-trial relief against Daphne Utilities for harm stemming from his own lack of diligence.

   [2]   *See also McDonald v. Cotton States Mut. Ins. Co.*, 2015 WL 1138026, *7 (M.D. Ala. Mar. 13, 2015) ("The majority of jurisdictions, as well as courts within this Circuit, have considered Rule 45 subpoenas issued to both parties and non-parties alike to constitute discovery, and thus, are subject to the discovery deadline.") (collecting cases); *In re FG Wilson* (Continued)

To be sure, such subpoenas may be properly issued for "trial preparation." *See, e.g., Circle Group, L.L.C. v. Southeastern Carpenters Regional Council*, 836 F. Supp.2d 1327, 1352 (N.D. Ga. 2011) ("Rule 45 subpoenas may be employed in advance of trial and outside of a discovery deadline for the limited purposes of memory refreshment, trial preparation, or to secure for the use at trial original documents previously disclosed by discovery."). However, a defendant's "assertion that the records are needed in order to prepare for trial is not persuasive where the need for the records should have been anticipated during the discovery period. To find otherwise would encourage litigants to routinely disregard discovery deadlines, and instead seek documents, via subpoena, outside of the discovery period by merely asserting that the documents are necessary for trial preparation." *Abrams*, 265 F.R.D. at 589; *see also Circle Group*, 836 F. Supp.2d at 1352 ("Practical considerations of case management compel the conclusion that Rule 45 subpoenas issued after the close of discovery and seeking to re-open discovery under the guise of trial preparation should be quashed.").

Applying these principles here, Daphne Utilities admits that it knew of the existence of Goodloe's EEOC Charge against Hargrove back in the spring of 2014, during the discovery period in this case. Defendant identifies no reason why it could not have subpoenaed the requested records from Hargrove during the discovery period. Under the circumstances, Daphne Utilities' issuance of Rule 45 subpoena to Hargrove five months after the close of discovery to obtain documents that it could have obtained earlier with diligence constitutes improper use of a Rule 45 subpoena to re-open discovery.[3] To hold otherwise would be to encourage litigants to

---

*(Engineering) Ltd.*, 2011 WL 5361073, *2 (S.D. Fla. Nov. 7, 2011) ("Rule 45 subpoenas have been held to generally constitute discovery.") (emphasis omitted).

[3] Defendant seeks to distinguish these circumstances from the likes of *Abrams* and *Circle Group* by insisting that "the subpoena was not to 'discover' something. It was to ensure the admissibility of a document." (Doc. 171, at 3.) This argument does not resonate. Prior to issuing the April 13 subpoena, Daphne Utilities apparently did not possess copies of Goodloe's EEOC Charge or related materials in Hargrove's files. Certainly, these documents had not previously been produced to Daphne Utilities during the discovery period. That defendant may have known that the Hargrove EEOC Charge existed does not alter the discovery nature of the subpoena to obtain documents that defendant did not have, that it wanted to receive before trial, and that it could have obtained during the discovery period with reasonable effort.

utilize such subpoenas willy-nilly to circumvent discovery deadlines in the name of "trial preparation," thereby rendering the Rule 16(b) Scheduling Order meaningless.

In addition to being violative of the discovery deadline specified in the Scheduling Order, the April 13 subpoena directed at Hargrove is problematic for another reason. The Federal Rules of Civil Procedure are crystal clear that "[i]f the subpoena commands the production of documents … before trial, then before it is served on the person to whom it is directed, ***a notice and a copy of the subpoena must be served on each party***." Rule 45(a)(4), Fed.R.Civ.P. (emphasis added). Daphne Utilities did not comply with this requirement. It did not furnish Goodloe with either a notice or a copy of the April 13 subpoena. As a result, Goodloe neither knew about the subpoena nor had an opportunity to lodge objections before Hargrove turned over documents in compliance with same. Defendant's counsel readily admits his error in this regard. (Doc. 171, at 2-3, 11.)

### B. Remedy.

As discussed *supra*, the Court finds that Daphne Utilities improperly issued the April 13 subpoena after the discovery deadline, in violation of the Rule 16(b) Scheduling Order, and that it contravened Rule 45(a)(4) by not providing Goodloe with notice of the April 13 subpoena to Hargrove. The critical question becomes what remedy (if any) is appropriate.

Goodloe seeks a new trial pursuant to Rule 59(a)(1)(A). That rule empowers district courts to grant a new trial in a civil case "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Rule 59(a)(1)(A), Fed.R.Civ.P. That said, the remedy of a new trial is "sparingly used." *Johnson v. Spencer Press of Maine, Inc.*, 364 F.3d 368, 375 (1st Cir. 2004); *see also Dean v. Specialized Sec. Response*, 876 F. Supp.2d 549, 553 (W.D. Penn. 2012) ("Requests for a new trial are disfavored by the law."). "Motions for new trial must establish a clear and obvious error of law or fact." *Evans v. Washington Metropolitan Area Transit Authority*, 816 F. Supp.2d 27, 31 (D.D.C. 2011) (citation omitted).

Goodloe's request for a new trial necessarily centers on the admission and use of Defendant's Exhibit 34 at trial. Indeed, plaintiff's position is that defendant improperly obtained Exhibit 34 and that he is entitled to a new trial because defendant used that exhibit against him at trial. The fundamental defect in this line of argument is that plaintiff never objected to, or moved to strike, Exhibit 34. Not before trial, when Daphne Utilities identified it in an exhibit list. Not during trial, when Daphne Utilities used it to cross-examine Goodloe and moved for its

admission into evidence.  Never.  These omissions preclude plaintiff from parlaying defendant's counsel's discovery and notice violations into a brand-new jury trial to erase a disappointing outcome.  *See, e.g., Wilson v. Attaway*, 757 F.2d 1227, 1242 (11th Cir. 1985) ("objections to the admission of evidence … are preserved only if they are timely and state the specific ground of objection, if the specific ground was not apparent from the context") (citations and internal quotations omitted); Rule 103(a)(1), Fed.R.Evid. (litigant preserves claim of error as to admission of evidence "only if the error affects a substantial right of the party and … a party, on the record … timely objects or moves to strike").[4]

The point is simple:  Goodloe says that Exhibit 34 should have been excluded at trial because it was obtained in violation of the Scheduling Order and without proper notice.  But Goodloe had at least two opportunities to prevent the admission of that exhibit at trial.  First, he could have filed a motion in limine to exclude Defendant's Exhibit 34 after it was disclosed in defendant's exhibit list in the Joint Pretrial Document.  Second, he could have objected at trial when defense counsel moved to introduce that exhibit into evidence and cross-examined Goodloe about it.  Instead, plaintiff remained silent.  Having done so, Goodloe has waived his objections to that exhibit.  Under the circumstances, the Court finds no clear and obvious error of law or fact in the admission into evidence of Defendant's Exhibit 34.  A new trial is not appropriate and will not be granted where, as here, the movant had a full and fair opportunity to object to the use of the offending exhibit at trial, but elected to remain silent.[5]

---

[4] *See also Proctor v. Fluor Enterprises, Inc.*, 494 F.3d 1337, 1349 (11th Cir. 2007) (to obtain relief based on evidentiary ruling, "a party must establish that … its claim was adequately preserved"); *Saunders v. Chatham County Bd. of Com'rs*, 728 F.2d 1367, 1368 (11th Cir. 1984) (principal purpose of objection "is that counsel bring to the attention of the trial judge evidence that counsel considers inadmissible or prejudicial so that, if there is an error involved, the court has a chance to correct it on the spot.  Requiring an objection means that counsel cannot remain silent at trial and then contend that evidentiary rulings require reversal."); *Port Authority Police Asian Jade Soc. of New York & New Jersey Inc. v. Port Authority of New York and New Jersey*, 681 F. Supp.2d 456, 466 (S.D.N.Y. 2010) ("Failure to make an objection either *in limine* or at trial ordinarily constitutes waiver."); *BFS Retail & Commercial Operations, LLC v. Harrelson*, 701 F. Supp.2d 1369, 1377 (S.D. Ga. 2009) ("Generally, when a party does not object to the admission of certain evidence at trial, that party waives his right to complain about such admissions later.").

[5] Another way to frame this conclusion is that Goodloe was not prejudiced by Daphne Utilities' violations of the Scheduling Order and Rule 45(a)(1)(4).  The reason he was (Continued)

To the extent that plaintiff requests lesser sanctions, such as attorney's fees, the result is the same. While Daphne Utilities undoubtedly sent an untimely subpoena to Hargrove and failed to provide required notice to Goodloe, those missteps were harmless because they did not prejudice Goodloe. Plaintiff had the ability to protect himself from the use of Defendant's Exhibit 34 at trial. His unexplained failure to seek a contemporaneous remedy to protect himself renders it inappropriate to impose sanctions against defendant for plaintiff's ensuing (preventable) harm. After all, the only attorney's fees that Goodloe incurred as a result of these errors by defense counsel were those expended in preparation of Goodloe's Motion for New Trial and accompanying briefing. Had plaintiff made a contemporaneous objection, such a post-trial Motion would have been unnecessary because the problem would have been corrected on the spot, with minimal inconvenience or expenditure of resources and without invoking the cumbersome machinery of post-trial motion practice. The Court will exercise its discretion not to impose the lesser requested sanction of attorney's fees against Daphne Utilities for a Rule 59 Motion that only came into being because of plaintiff's lack of diligence in reviewing the Joint Pretrial Document and his silence at trial when the offending exhibit was introduced into evidence. Stated differently, the Court finds that plaintiff did not incur any attorney's fees "because of any noncompliance with this rule." Rule 16(f)(2), Fed.R.Civ.P. Nor does this case evince the sort of bad faith or willful disobedience of court orders that might warrant sanctions

---

not prejudiced is that, even with defendant's errors, plaintiff retained ample opportunities to prevent Defendant's Exhibit 34 from being used against him at trial. A pretrial motion in limine after the exhibit was disclosed in the Joint Pretrial Document, or a sidebar objection when defendant's counsel began cross-examining Goodloe about the exhibit, would have corrected the error and ameliorated any prejudice to plaintiff. Given Goodloe's failure to object, however, defendant's technical and procedural errors in procuring the Hargrove EEOC Charge after discovery closed and without notice to plaintiff are harmless. In his reply brief, Goodloe insists that "[t]he failure to object at trial does not excuse the blatant rule and discovery violation." (Doc. 173, at 10.) True enough. Plaintiff's failure to object does not excuse defendant's violations; however, it does eliminate plaintiff's remedy. The unfavorable situation in which plaintiff finds himself is one of his own creation. Had he timely objected before or during trial based on information he had before him at that time, effective curative measures could have been implemented then. Corrective action could have been taken, and the improperly obtained evidence could have been excluded, with no adverse effects on plaintiff or plaintiff's case. By remaining silent before and during trial, Goodloe failed to preserve the issue and waived any right to a post-judgment remedy.

under the Court's inherent powers, or the kind of excessive, cost-multiplying behavior that might trigger sanctions under 28 U.S.C. § 1927. Simply put, the requested sanctions are not appropriate here.

### C. *Defendant's Motion to Re-Tax Costs.*

In a separate Motion, defendant seeks to re-tax costs pursuant to Rule 54(d)(1), Fed.R.Civ.P., and Local Rule 54.1(c). The only costs that Daphne Utilities seeks to have taxed are as follows: (i) $2,344.10 in court reporter fees for Cedric Goodloe's deposition transcript and video, and (ii) $100.70 in photocopying fees for trial exhibits. These costs are adequately documented in exhibits accompanying the Motion. Both categories of costs were for materials necessarily obtained for use in the case, inasmuch as defendant relied extensively on the transcript and video of Goodloe's deposition, as well as defendant's photocopied exhibits, at trial. Taxation of these costs is plainly authorized pursuant to 28 U.S.C. § 1920(2) and (4). And, despite a full and fair opportunity to do so, plaintiff interposed neither objection nor response to the Motion to Re-Tax Costs. For all of these reasons, defendant's Motion to Re-Tax Costs is **granted**. Costs are hereby **re-taxed** against plaintiff and in favor of defendant, pursuant to 28 U.S.C. § 1920, Rule 54(d)(1) of the Federal Rules of Civil Procedure, and Local Rule 54.1(c), in the total amount of **$2,444.80**.

### III. Conclusion.

For all of the foregoing reasons, it is **ordered** as follows:

1. Plaintiff Cedric Goodloe's "Motion for New Trial and Sanctions due to Gross Attorney Misconduct" (doc. 168) is **denied**; and
2. Defendant's Motion to Re-Tax Costs (doc. 169) is **granted**, with costs being **re-taxed** against plaintiff and in favor of defendant, in the total amount of **$2,444.80**.

DONE and ORDERED this 27th day of July, 2015.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE